**FIRST DIVISION**
**April 21, 2008**

No. 1-06-1432

| | | |
|---|---|---|
| BRANDON APPAREL GROUP, ERIC P. LEFKOFSKY and BRADLEY A. KEYWELL, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants Cross-Appellees, | ) ) ) | |
| v. | ) ) | No. 00 CH 16669 |
| KIRKLAND AND ELLIS, | ) ) | The Honorable David R. Donnersberger, |
| Defendant-Appellee Cross-Appellant. | ) ) | Judge Presiding. |

JUSTICE GARCIA delivered the opinion of the court.

The plaintiffs, Brandon Apparel Group (Brandon), Bradley A. Keywell, and Eric P. Lefkofsky, retained the defendant law firm Kirkland & Ellis (Kirkland) to represent them in a dispute over certain loans. After a default judgement was entered against Brandon, Keywell, and Lefkofsky in that litigation, they filed the instant legal malpractice action against Kirkland.

The trial court granted Kirkland's amended motion for summary judgment, finding the plaintiffs had improperly assigned their legal malpractice claim. The court denied Kirkland's motion for partial summary judgment as to the plaintiffs' damages.

No. 1-06-1432

The trial court entered an order pursuant to Supreme Court Rule 304(a) (210 Ill. 2d R 304(a)), finding there was "no just reason for delaying either enforcement or appeal or both" of its grant of summary judgment. The trial court also stayed proceedings on Kirkland's counterclaim pending appeal. For the reasons that follow, we reverse and remand.

BACKGROUND

The alleged legal malpractice at issue in this case stems from the defendant law firm's representation of Brandon, Keywell, and Lefkofsky in Johnson Bank v. Brandon Apparel Group, Inc., No. 00-CV256 (August 9, 2000), filed in the circuit court of Rock County, Wisconsin, in 2000 (the underlying litigation).

I. The Underlying Litigation

In 1997, Brandon, a company specializing in the manufacture and sale of athletic apparel, obtained two loans from Johnson Bank. The loans included a $5 million term loan and a $4 million revolving credit loan. These loans were secured by Brandon's assets. Keywell and Lefkofsky, Brandon's principals, were guarantors of the loans.

In May 1999, Brandon entered into the "First Amendment to Term Loan Agreement" and the "First Amendment to Revolving Credit Loan Agreement" with Johnson Bank. As part of these amendments, Brandon acknowledged the total principal of its loans was approximately $10.1 million. Brandon also agreed to release

Johnson Bank from "all claims, demands or causes of action of any kind." Although Lefkofsky expressed concern about the release's "broad-based waiver" as to "all *** legal rights" with regard to the loans, he and Keywell signed the amendments. Keywell and Lefkofsky also signed an "Acknowledgment and Agreement of Guarantors" for each loan. The acknowledgments released Johnson Bank from all "defenses, claims, offsets and counterclaims *** accrued to date."

Soon after, Johnson Bank determined Brandon was in default of the loans. Brandon and Johnson Bank attempted to resolve the matter. On September 1, 1999, Brandon entered into the "Moratorium Agreement" with Johnson Bank. Keywell and Lefkofsky signed the agreement as guarantors. As part of this agreement, Brandon acknowledged $6.5 million was due and owing on the revolving credit loan and approximately $3.8 million was due and owing on the term loan.

Brandon retained Kirkland after the execution of the Moratorium Agreement. Kirkland represented Brandon in connection with the negotiation of the "Second Moratorium Agreement" with Johnson Bank. Pursuant to this agreement, Brandon, Keywell, and Lefkofsky acknowledged approximately $6.4 million plus interest due and owing on the revolving credit loan and $3.8 million plus interest due and owing on the term loan. As part of the agreement, Brandon, Keywell, and Lefkofsky released Johnson Bank

No. 1-06-1432

from all "claims, demands or causes of action of any kind."

On March 8, 2000, counsel for Johnson Bank filed a complaint against Brandon, Keywell, and Lefkofsky in the circuit court of Rock County, Wisconsin. The complaint alleged Brandon was in default of the Second Moratorium Agreement. The complaint also alleged Keywell and Lefkofsky, as guarantors, were liable pursuant to their guarantees. The complaint asked for relief of approximately $10.7 million.

Kirkland attorney James Stempel entered into an agreement with Johnson Bank's counsel to answer or otherwise plead in the underlying litigation by April 14, 2000. This agreement was memorialized in a March 31, 2000, letter. When an answer was not filed by the agreed-to deadline, Johnson Bank filed a motion for a default judgment.

On May 18, 2000, Kirkland filed a motion in opposition to the entry of a default judgment. The motion (1) requested the court "enlarge" the time to answer or otherwise plead, (2) asked the court for leave to file an answer instanter, and (3) opposed the motion for a default judgment. In support of the motion, Kirkland attorney Stempel submitted an affidavit alleging the existence of an oral agreement with Johnson Banks's counsel, Albert Solochek, that further extended the time to answer the complaint.

Brandon's answer, which Kirkland sought leave to file

No. 1-06-1432

instanter, denied the complaint's allegations of money due and owing and asserted affirmative defenses.

On August 9, 2000, the Wisconsin circuit court granted Johnson Bank's motion for a default judgment. In September 2000, a judgment of approximately $11 million was entered against Brandon, Keywell, and Lefkofsky. A timely appeal was filed.[1]

The Wisconsin appellate court reversed the entry of default judgment and remanded the case to the circuit court for an evidentiary hearing to determine whether the alleged oral agreement to extend the time to answer existed.

On January 4, 2002, the Wisconsin circuit court conducted an evidentiary hearing. Following the hearing, the circuit court concluded there was no oral agreement to extend the time to answer. The circuit court held that the entry of a default judgment was appropriate. On February 14, 2002, the circuit court entered a default judgment in the amount of $12,353,784 against Brandon, Keywell, and Lefkofsky. This amount included interest due and owing on the loans through January 14, 2002. Costs of approximately $37,000 were also entered against Brandon,

_____

[1]Shortly after the appeal was filed in the underlying litigation, Brandon, Keywell, and Lefkofsky filed this malpractice action against Kirkland in the circuit court of Cook County. The parties agreed to stay the malpractice action pending the outcome of the underlying litigation.

No. 1-06-1432

Keywell, and Lefkofsky, with attorney fees to be determined at a later date.

On May 22, 2002, a Johnson Bank executive was appointed as a supplemental receiver of Brandon's property pursuant to a receivership order entered by the Wisconsin circuit court (the receivership order). The receivership order defined "property" to include "any and all proceeds from any actions, claims or interests by or of [Brandon, Keywell, and Lefkofsky] against or as to Kirkland & Ellis."

The receivership order also required Brandon, Keywell, Lefkofsky, and their attorneys to confer with the receiver regarding the course of any malpractice claim against Kirkland. Should the two sides disagree as to litigation decisions, either party could seek a judicial remedy in the Wisconsin circuit court. Pursuant to the receivership order, Brandon, Keywell, and Lefkofsky could not "settle, compromise, dismiss, or substantially impair [the malpractice litigation] without the express written consent" of the receiver or of the Wisconsin circuit court after notice and a hearing.

## II. The Malpractice Litigation

On November 17, 2000, Brandon, Keywell, and Lefkofsky (the plaintiffs) filed a declaratory judgment action against Kirkland in the circuit court of Cook County. The plaintiffs alleged Kirkland's failure to file a timely answer in the underlying

litigation led to the entry of a $12 million default judgment. Kirkland's answer denied the legal malpractice and asserted a counterclaim for unpaid attorney fees and costs.

In September 2002, the plaintiffs filed a five-count first-amended complaint. Count I sought a judicial declaration that the Wisconsin circuit court had made no determination denying Brandon's affirmative defenses against Johnson Bank and, as a result, Kirkland may be held liable for damages proximately caused by Kirkland's negligence. Count II sought a judicial declaration that (1) Kirkland breached its duty to the plaintiffs, (2) the plaintiffs had no further obligations to Kirkland, and (3) Kirkland must reimburse the plaintiffs for all sums previously paid to the firm. Count III alleged fraud, count IV alleged professional negligence, and count V alleged breach of contract. On February 18, 2003, the trial court entered an order dismissing counts I and III.

After the filing of the first-amended complaint, the plaintiffs wished to retain new counsel. Johnson Bank disagreed with the plaintiffs' initial decision to retain counsel based on a continency fee arrangement. Johnson Bank preferred the plaintiffs retain a firm based on an hourly billing arrangement. Johnson Bank's counsel stated Johnson Bank and the receiver "would consider the [contingency] fee arrangement *** provid[ed] [Keywell and Lefkofsky] deposit[ed] sufficient sums *** to cover

No. 1-06-1432

and protect the Bank and the Receiver" from any additional amount that would be taken from the recovery because of a contingency fee arrangement as opposed to an hourly fee arrangement. Johnson Bank's counsel reminded Keywell, "you *** have acknowledged on many occasions, the Bank is the real and only beneficiary in the Kirkland case." Johnson Bank's counsel suggested the plaintiffs seek a judicial determination of the dispute in the Wisconsin circuit court pursuant to the receivership order. The plaintiffs did not seek a judicial remedy, instead retaining a firm pursuant to an agreement that included aspects of both billing arrangements.

The firm currently representing the plaintiffs, Connelly Roberts & McGinvey, was retained in 2004. In the engagement letter, plaintiffs' current counsel, Michael Connelly, acknowledged that any recovery in the malpractice litigation was the property of the receiver and that Johnson Bank would be paying his firm's invoices. The engagement letter also recognized that Johnson Bank could discontinue paying the plaintiffs' legal fees at any time. While the letter stated the firm would advance Brandon, Keywell and Lefkofsky's interests, it also acknowledged the firm could be discharged by Brandon, Keywell, Lefkofsky, or Johnson Bank.

Johnson Bank's counsel and Connelly corresponded during the instant litigation regarding litigation strategy and

expenditures. After receiving a litigation budget in the fall of 2004, Johnson Bank's counsel suggested that Connelly "temper the time *** put in this case." Counsel also "suggest[ed] that [Connelly] defer what [he could,] for now." Should plaintiffs' counsel have "any questions as to whether a particular task should be undertaken," he was invited to discuss the matter with Johnson Bank's counsel. Johnson Bank's counsel also corresponded with Connelly regarding the cost, preparation, and filing of a potential motion for summary judgement.

While the malpractice litigation was pending, Brandon, Keywell, and Lefkofsky entered into the "Common Interest Agreement" with the receiver and Johnson Bank. In this agreement, the parties determined it was in their "best interest" to consult regarding the malpractice litigation and such "consultations" would be "subject to the attorney-client privilege."

The trial court recognized this privilege in a February 4, 2005, order. In that order, the trial court denied Kirkland's motion to compel the production of documents and testimony regarding all communications between Johnson Bank, the receiver or its counsel, and the plaintiffs and their attorney. The trial court found the documents at issue were protected subject to the "common interest doctrine" because the documents were prepared in order to further the parties' "joint litigation strategy."

On March 17, 2005, Kirkland filed a motion for summary judgment which alleged the plaintiffs had improperly assigned their legal malpractice claim to Johnson Bank.

In their response to Kirkland's motion for summary judgment, the plaintiffs attached an affidavit from their attorney, Michael Connelly. Connelly stated that while he had "consulted" with counsel for Johnson Bank regarding litigation strategy, he had not yielded control over decision making in the malpractice litigation to Johnson Bank or its counsel.

Kirkland moved for and was granted discovery regarding communications between Johnson Bank's counsel, Connelly, and the plaintiffs regarding the direction and control of the malpractice litigation.

During this discovery, Kirkland deposed Connelly. Connelly testified in his deposition that when he was retained, he understood that while Johnson Bank would receive the proceeds of the malpractice litigation, Brandon, Keywell, and Lefkofsky were his clients. Connelly believed he had some "fiduciary obligations" to Johnson Bank because the bank was entitled to any recovery in the malpractice litigation. Because of this interest in the recovery, he consulted with Johnson Bank's counsel regarding progress in the malpractice litigation. Connelly further testified that when he was retained "the one thing that was made clear was that [he] could not settle the case without

No. 1-06-1432

consulting" Johnson Bank's counsel.

Connelly testified that when he was told by Johnson Bank's counsel to defer work, he responded that he would do what was necessary to effectively represent his clients, Brandon, Keywell, and Lefkofsky. Connelly also testified he filed pleadings and conducted depositions, including the depositions of Kirkland attorneys involved in the underlying litigation, without receiving Johnson Bank's counsel's approval in advance.

After the conclusion of the discovery regarding the communications between the plaintiffs, Connelly, and Johnson Bank, Kirkland filed an amended motion for summary judgment on January 11, 2006. The amended motion argued that summary judgment was appropriate because Johnson Bank, a third-party judgment creditor, was the "real" beneficiary of the malpractice litigation and the malpractice claim had been improperly assigned to Johnson Bank. Kirkland argued the documentary evidence attached to its amended motion for summary judgment, including the deposition transcripts of Connelly and Johnson Bank's counsel, the receivership order, and correspondence between Johnson Bank, the plaintiffs, and Connelly, established that Johnson Bank controlled the malpractice litigation. In the alternative, Kirkland argued it was entitled to partial summary judgment on the issue of damages. According to Kirkland, it could not be held responsible for the $10.1 million Kirkland

contended the plaintiffs owed Johnson Bank before Kirkland was retained.

In their response, the plaintiffs argued they remained the beneficiaries of the malpractice litigation and they had not assigned their legal malpractice claim to Johnson Bank.

Attached to the plaintiffs' response to the amended motion for summary judgment was a copy of the "Settlement Agreement and Release" executed between Johnson Bank, Brandon, Keywell and Lefkofsky.  The settlement agreement released and resolved all claims and obligations between Johnson Bank, Keywell and Lefkofsky, "as well as any claims Brandon Apparel Group *** may have against [Johnson] Bank."  Keywell and Lefkofsky agreed to pay Johnson Bank $1.125 million and in turn were released from the judgment entered in the underlying litigation and dismissed from all other litigation between Johnson Bank and Brandon.

Additionally, Keywell and Lefkofsky executed the "Agreement of Cooperation" as an addendum to the Settlement Agreement and Release.  Pursuant to the Agreement of Cooperation, if Johnson Bank continued to fund the malpractice litigation, Keywell and Lefkofsky

> "each [agreed] to provide a minimum of 100
> hours to assist the law firm of Connelly
> Roberts & McGivney, LLC (or any other firm
> that is acting on behalf of the Plaintiffs)

in case and trial preparation, such
assistance to be provided at the request and
direction of the law firm.  The 100 hours
would include any deposition time in the
case, but would not include time at trial.
If necessary, in the opinion of trial
counsel, *** Keywell and Lefkofsky would
agree to attend each day of the trial
proceedings in the case."

As a condition of the agreement, Keywell and Lefkofsky agreed to take no action that was inconsistent with the best interests of the malpractice litigation.  If either Keywell or Lefkofsky breached the agreement, Johnson Bank was entitled to $400,000 in damages.

The cooperation agreement addressed how any potential recovery in the malpractice litigation would be divided.  If Johnson Bank continued to fund the malpractice litigation, any recovery would first be used to reimburse Johnson Bank for amounts expended on attorney fees and costs.  From any funds remaining after the payment of attorney fees and costs, Johnson Bank would receive the first $1 million.  Any amount in excess of $1 million, but less than $2 million would be apportioned 95% to Johnson Bank and 5% to Keywell and Lefkofsky.  Any recovery more than $2 million would be apportioned 90% to Johnson Bank and 10%

No. 1-06-1432

to Keywell and Lefkofsky.

If Johnson Bank discontinued funding the malpractice litigation, Keywell and Lefkofsky could, but were not required to, pursue the litigation at their own expense. Should a recovery be made under those circumstances, it would be apportioned 90% to Keywell and Lefkofsky and 10% to Johnson Bank.

On March 29, 2006, the trial court granted Kirkland's amended motion for summary judgment as to the assignment of the legal malpractice claim but denied Kirkland's alternative motion for partial summary judgment as to damages. The court found that although the plaintiffs had not formally assigned the legal malpractice claim to Johnson Bank, in effect, an assignment had occurred. The court concluded that with the entry of the receivership order on May 22, 2002, Johnson Bank became the party entitled to any recovery in the malpractice litigation, as well as the party in control of the malpractice litigation. Thus, the court found a de facto assignment of the malpractice litigation had occurred.

The court also relied on the cooperation agreement entered into between Keywell, Lefkofsky, and Johnson Bank to determine that a de facto assignment had occurred. The court reasoned that if Keywell and Lefkofsky were still the "real parties in interest" to the malpractice litigation, there would be no reason to require their cooperation with routine case matters and trial

No. 1-06-1432

preparation.

The trial court entered an order pursuant to Supreme Court Rule 304(a) (210 Ill. 2d R 304(a)), finding there was "no just reason for delaying either enforcement or appeal or both" of the March 29, 2006, order. The plaintiffs filed a notice of appeal from the trial court's grant of summary judgment. Kirkland filed a notice of cross-appeal from the trial court's denial of its motion for partial summary judgment.

ANALYSIS

The plaintiffs assert the trial court erred in granting summary judgment in favor of Kirkland. The plaintiffs contend no assignment to Johnson Bank of their legal malpractice claim occurred because the receivership order entered by the Wisconsin circuit court was not an assignment.

In its cross-appeal, Kirkland contends it was entitled to partial summary judgment as to the amount of damages actually suffered by the plaintiffs as a result of Kirkland's alleged negligence. Kirkland contends that $10.1 million of the judgment entered against the plaintiffs in the underlying litigation was based on loan documents signed between the plaintiffs and Johnson Bank before Kirkland was retained and therefore not subject to challenge as a matter of law. Kirkland asks this court to consider its cross-appeal only if we reverse the trial court's entry of summary judgment.

No. 1-06-1432

"Summary judgment is appropriate only where 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " Governmental Interinsurance Exchange v. Judge, 221 Ill. 2d 195, 214-15, 850 N.E.2d 183 (2006), quoting 735 ILCS 5/2-1005(c) (West 2004). The court "must construe all evidence strictly against the movant and liberally in favor of the nonmoving party." Larry Karchmar, Ltd. v. Nevoral, 302 Ill. App. 3d 951, 956, 707 N.E.2d 223 (1999).

"On appeal from a grant of summary judgment, a reviewing court's function is to determine whether the trial court properly concluded that there was no genuine issue of material fact, and if there was not, whether the judgment was correct as a matter of law." People ex rel. Burris v. Memorial Consultants, Inc., 224 Ill. App. 3d 653, 656, 587 N.E.2d 34 (1992). This court reviews the grant of summary judgment de novo. Governmental Interinsurance Exchange, 221 Ill. 2d at 215.

I. The Legal Malpractice Claim

Legal malpractice claims are not assignable in Illinois. Wilson v. Coronet Insurance Co., 293 Ill. App. 3d 992, 995, 689 N.E.2d 1157 (1997). This court has held that "sound public policy prohibits the assignment of [legal malpractice claims] since an assignee would be a stranger to the attorney-client

No. 1-06-1432

relationship, who was owed no duty by the attorney and who suffered no injury from the attorney's actions." Clement v. Prestwich, 114 Ill. App. 3d 479, 480-81, 448 N.E.2d 1039 (1983).

Here, the plaintiffs contend they have not assigned their legal malpractice claim to Johnson Bank. The plaintiffs contend the receivership order did "not constitute or effect an assignment of the plaintiffs' malpractice claim." Rather, it merely gave "Johnson Bank a lien upon the proceeds" of the malpractice litigation. Additionally, the plaintiffs argue that even if they had improperly assigned their legal malpractice claim to Johnson Bank, the trial court erred by entering summary judgment rather than merely voiding the assignment and allowing the plaintiffs to continue the malpractice litigation.

## A. The Receivership Order

The receivership order entered by the Wisconsin circuit court appointed an executive at Johnson Bank as the supplemental receiver of Brandon's property. The receivership order defined property to include, "any and all proceeds from any actions, claims or interests by or of [Brandon, Keywell, and Lefkofsky] against or as to Kirkland & Ellis." It is undisputed that the receivership order made Johnson Bank the party entitled to the recovery in the malpractice litigation. The dispute between the parties centers on whether the receivership order, in light of the other circumstances present in this case, also effectively

No. 1-06-1432

assigned the legal malpractice claim to Johnson Bank.

The receivership order required Brandon, Keywell, Lefkofsky, and their attorneys to consult with the receiver regarding litigation strategy and settlement. The order provided for resolution by the Wisconsin circuit court of any litigation disputes between the parties. The Agreement of Cooperation entered into between plaintiffs Keywell and Lefkofsky and Johnson Bank, at the time of their settlement agreement, provided a formula for the division of any recovery in the malpractice litigation. The trial court below concluded that the combination of the receivership order and the cooperation agreement gave Johnson Bank such control over the malpractice litigation that a de facto assignment occurred. Consistent with the trial court's ruling, Kirkland contends "the undisputed facts demonstrate that Johnson Bank has used its rights under the Receivership Order, and its funding of this litigation, to direct major decisions regarding the prosecution of this lawsuit." According to Kirkland, Johnson Bank's priority claim to any recovery from the malpractice suit and its control "over virtually all major litigation decisions establishes a de facto assignment."

Neither our research nor that of either of the parties has disclosed a case addressing the precise question before us: when is de facto assignment of a legal malpractice claim established as a matter of law? We look to cases involving the assignments

No. 1-06-1432

in other areas of the law for guidance.

The legal landscape regarding what constitutes an assignment is fairly clear. An assignment occurs when "there is a transfer of some identifiable interest from the assignor to the assignee." Klehm v. Grecian Chalet, Ltd., 164 Ill. App. 3d 610, 616, 518 N.E.2d 187 (1987). "Generally, no particular form of assignment is required; any document which sufficiently evidences the intent of the assignor to vest ownership of the subject matter of the assignment in the assignee is sufficient to effect an assignment." Stoller v. Exchange National Bank of Chicago, 199 Ill. App. 3d 674, 681, 557 N.E.2d 438 (1990). A valid assignment "needs only to assign or transfer the whole or a part of some particular thing, debt, or chose in action and it must describe the subject matter of the assignment with sufficient particularity to render it capable of identification." Klehm, 164 Ill. App. 3d at 616. The assignment transfers to the assignee all the " 'right, title or interest of the assignor in the thing assigned.' " Owens v. McDermott, Will & Emery, 316 Ill. App. 3d 340, 350, 736 N.E.2d 145 (2000), quoting Litwin v. Timbercrest Estates, Inc., 37 Ill. App. 3d 956, 958, 347 N.E.2d 378 (1976). Thus, the assignee stands in the "shoes" of the assignor. City of Chicago in Trust for the Use of Schools v. Fischer, 52 Ill. App. 2d 55, 61, 201 N.E.2d 660 (1964).

More difficult is determining whether a de facto, rather

than a formal, assignment has occurred. The "creation and existence of an assignment is to be determined according to the intention of the parties, and that intention is a question of fact to be derived not only from the instruments executed by them, but from the surrounding circumstances." Rivan Die Mold Corp. v. Stewart Warner Corp., 26 Ill. App. 3d 637, 642, 325 N.E.2d 357 (1975); Northwest Diversified, Inc. v. Desai, 353 Ill. App. 3d 378, 387, 818 N.E.2d 753 (2004). "Whether an assignment has occurred 'is dependent upon proof of intent to make an assignment and that intent must be manifested.'" Northwest Diversified, Inc. v. Desai, 353 Ill. App. 3d 378, 387, 818 N.E.2d 753 (2004), quoting Strosberg v. Brauvin Realty Services, Inc., 295 Ill. App. 3d 17, 30, 691 N.E.2d 834 (1998).

The language of the agreement between the plaintiffs and Johnson Bank as set out in the receivership order and the cooperation agreement is not disputed; however, the parties to the agreement itself reject that an assignment occurred. It is Kirkland, a stranger to the agreement, that contends the agreement constituted a de facto assignment of the plaintiffs' legal malpractice claim. Kirkland contends the receivership order effectively assigned the legal malpractice claim to Johnson Bank because the plaintiffs acknowledged that Johnson Bank was the "real and only beneficiary" of the litigation, and under the extant circumstances, the plaintiffs ceded control to Johnson

Bank over the litigation.

The plaintiffs contend to the contrary; the receivership order provided no more than "a right to be heard" to the lienholder, Johnson Bank, regarding the subject of the lien. Brandon, Keywell, and Lefkofsky deny they ever intended to assign their legal malpractice claim to Johnson Bank.

There are strong arguments on both sides of the issue.

The Wisconsin circuit court entered the receivership order on May 22, 2002. At that time, the malpractice litigation had been pending in Cook County for almost two years. If, as the plaintiffs contend, this litigation was their most valuable asset, they would presumably not enter into an agreement that created an assignment void under Illinois law, thereby possibly undoing the litigation the plaintiffs had filed two years prior. If the receivership order were an assignment of the legal malpractice claim, there would be no point in requiring Brandon, Keywell, and Lefkofsky to consult with the receiver regarding litigation strategy and settlement because the receiver, as assignee, would presumably be entitled to make those decisions. Although Connelly consulted with Johnson Bank's counsel and recognized a fiduciary duty to Johnson Bank as the recipient of any recovery in the malpractice litigation, he also acknowledged that Brandon, Keywell, and Lefkofsky were his clients and it was their interests that he sought to advance in this litigation.

No. 1-06-1432

While the plaintiffs and their counsel admitted Johnson Bank's counsel was vocal regarding the malpractice litigation, the plaintiffs' counsel characterized the comments as suggestions. In his deposition and again at oral argument, the plaintiffs' counsel denied surrendering control of the malpractice litigation to Johnson Bank or its counsel. Viewing the receivership order in the light most favorable to the plaintiffs, it may only have given Johnson Bank, through the receiver, the ability to delay litigation decisions or settlement, as there was no guarantee the Wisconsin circuit court would agree with Johnson Bank's position on a particular issue should judicial intervention be required. The receivership order, itself, did not give Johnson Bank the final word in the case of a disagreement with the plaintiffs.

On the other hand, Kirkland focuses on the exchange between Johnson Bank's counsel and the plaintiffs regarding the retention of new counsel as evidence of Johnson Bank's control of the litigation. While it is true Johnson Bank's counsel did not forbid the hiring of the plaintiffs' initial candidate as counsel, it is also clear Johnson Bank swayed the decision. Indeed, Johnson Bank's counsel suggested the plaintiffs take the disagreement before the Wisconsin circuit court. Of course, had the legal malpractice claim been truly assigned to Johnson Bank, it could have ended the discussion with a refusal rather than suggest presenting the dispute to the Wisconsin circuit court.

No. 1-06-1432

The record does not reveal whether Johnson Bank went before the Wisconsin circuit court for a judicial determination of this matter. The fact that Johnson Bank could not unilaterally decide who to retain as new counsel indicates the receivership order did not transfer all rights in the malpractice litigation from Brandon, Keywell, and Lefkofsky to Johnson Bank.

The determination of the extent of the consultation with Johnson Bank and whether that consultation became control is a factual question that needs further development. The creation of an assignment is determined according to the parties' intentions. These intentions are a question of fact derived from the instruments executed and the surrounding circumstances. Rivan Die Mold Corp., 26 Ill. App. 3d at 642. The intent to make an assignment must be manifest. Northwest Diversified, Inc. v. Desai, 353 Ill. App. 3d at 387. Where the agreement at issue is capable of being understood in more than one sense, "evidence of extrinsic facts and circumstances" is necessary to determine the intent and agreement of the parties. Rivan Die Mold Corp., 26 Ill. App. 3d at 642.

Viewing the receivership order in the light most favorable to the plaintiffs, whether the receivership order created a de facto assignment of the instant legal malpractice claim is a question of fact not properly determined pursuant to a motion for summary judgment on the state of the record before us.

No. 1-06-1432

## B. Remedy for an Improper Assignment

The parties have presented two lines of cases that provide opposing consequences of an improper assignment.

The plaintiffs contend the proper remedy of an improper assignment would be to void the assignment and allow them to continue with the malpractice litigation. The plaintiffs rely on Mallios v. Baker, 11 S.W.3d 157, 159 (Tex. 2000), and Weston v. Dowty, 163 Mich. App. 238, 241, 414 N.W.2d 165, 167 (1987), for the proposition that a former client's right to bring his own cause of action for malpractice is not extinguished by the invalid assignment of a legal malpractice claim.

Kirkland, on the other hand, argues nothing "could remove the taint resulting from years of litigating under an impermissible assignment" and that the proper remedy would be the entry of a judgment against the plaintiffs. Kirkland relies on Gurski v. Rosenblum & Filan, LLC, 276 Conn. 257, 278-79, 885 A.2d 163, 174 (2005), for the proposition that the proper remedy for an improper assignment of a legal malpractice claim is to terminate the litigation in the defendant's favor.

Because we conclude a question of fact remains whether the plaintiffs' intentions underlying the receivership order and the surrounding circumstances was to create an assignment of the plaintiffs' legal malpractice claim, which must be determined upon remand below, we do not express an opinion as to which of

No. 1-06-1432

the opposing lines of cases Illinois would follow.

## II. Kirkland's Cross-Appeal

Kirkland contends the trial court erred by denying its motion for partial summary judgment as to $10.1 million of the judgment entered in the Wisconsin litigation based on loan documents signed between the plaintiffs and Johnson Bank before Kirkland was retained.

Ordinarily, a trial court's order denying a summary judgment motion is not appealable as such an order is interlocutory. Arangold Corp. v. Zehnder, 187 Ill. 2d 341, 357, 718 N.E.2d 191 (1999). There are circumstances under which such an order may warrant review; for instance, when the trial court has ruled on cross-motions for summary judgment "on the same claim." (Emphasis omitted.) Arangold, 187 Ill. 2d at 358.

The plaintiffs here did not file a cross-motion for summary judgment on the partial damages issue. Also, the trial court determined that the release as part of the loan documents signed between the plaintiffs and Johnson Bank before Kirkland was retained "was silent as to the waiver of any defenses in the event the Plaintiffs were sued by Johnson Bank." Consistent with the trial court's ruling, we find Kirkland's attempt to apportion the default judgment amount between the damages proximately caused by any negligence by Kirkland and the indebtedness of plaintiffs to Johnson Bank flowing from the loan documents to be

No. 1-06-1432

unamenable to resolution by summary judgment.  Finally, we are remanding for further proceedings regarding whether a <u>de facto</u> assignment occurred.  Consequently, we see no purpose in further addressing Kirkland's cross-appeal and we decline to do so.  See <u>Price v. Hickory Point Bank & Trust</u>, 362 Ill. App. 3d 1211, 1222, 841 N.E.2d 1084 (2006).

CONCLUSION

For the reasons stated above, we reverse the trial court's judgment and remand for further proceedings consistent with this decision.

Reversed and remanded.

WOLFSON and R. GORDON, JJ., concur.

# REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

**BRANDON APPAREL GROUP, INC., et al.,**
**Plaintiffs-Appellants-Cross-Appellees,**

**v.**

**KIRKLAND & ELLIS,**
**Defendant-Appellee-Cross-Appellant.**

## No. 1-06-1432

**Appellate Court of Illinois**
**First District, First Division**

**Filed: April 21, 2008**

**JUSTICE GARCIA delivered the opinion of the court.**

**WOLFSON and R. GORDON, JJ., concur.**

**Appeal from the Circuit Court of Cook County**
**Honorable David R. Donnersberger, Judge Presiding**

| | |
|---|---|
| **For DEFENDANT -**<br>**APPELLEE-**<br>**CROSS-APPELLANT** | **Michael L. Shakman**<br>**Thomas M. Staunton**<br>**Miller Shakman & Beem, LLP**<br>**180 North LaSalle Street, Suite 3600**<br>**Chicago, Illinois 60601** |
| **For PLAINTIFF -**<br>**APPELLANT-**<br>**CROSS-APPELLEE** | **Michael P. Connelly**<br>**William E. Snyder**<br>**Connelly Roberts & McGiveny, LLC**<br>**One North Franklin Street, Suite 1200**<br>**Chicago, Illinois 60606** |