FIFTH DIVISION
December 31, 2009

No. 1-09-1538


APOLLO REAL ESTATE INVESTMENT )
FUND, IV, L.P., a Delaware Limited Partnership, )
 )
  Plaintiff-Appellees, )
 ) Appeal from the
 v. ) Circuit Court of
 ) Cook County.
BRIAN GELBER, GELBER SECURITIES, LLC, )
an Illinois Limited Liability Company, ICE, LLC, an ) 07 L 5194
Illinois Limited Liability Company, GO, LLC, an )
Illinois Limited Liability Company, JOSEPH ) The Honorable
NICIFORO, ANNE M. NICIFORO, H. ROBERT ) Bill Taylor,
HOLMES, LAURENCE WOZNICKI, and GARY ) Judge Presiding.
SCHEIER, )
 )
  Defendants-Appellants. )


JUSTICE TOOMIN delivered the opinion of the court:

This matter is before us on interlocutory appeal pursuant to the provisions of Supreme

Court Rule 308 (155 Ill. 2d R. 308) to consider three questions certified by the trial court.

Plaintiff, Apollo Real Estate Investment Fund IV, L.P. (Apollo), was assigned an Ohio judgment

obtained by its assignor in 2004 against several corporate entities.  In 2005, plaintiff brought an

action in the circuit court of Cook County against defendants to collect money it claims was

wrongfully transferred to them in 2001 by the judgment debtor corporation to avoid paying for

the underlying work performed for the debt.  Following dismissal of the complaint, plaintiff

voluntarily dismissed the case.  Then, in 2007, plaintiff refiled a new action, against these same

defendants, again seeking to recover money on the judgment.  All counts were dismissed except a

claim for unjust enrichment. Pursuant to the parties request, the circuit court then certified the following questions for our review:

"1. Whether an assignment, which expressly distinguishes between claims and judgments, confers standing on the assignee to enforce the monetary judgment by asserting new claims unrelated to the judgment against parties not named in the underlying litigation.

2. Whether, under the standard articulated by the Illinois Supreme Court in *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343 (Ill. 2008), a cause of action for unjust enrichment relating to construction work performed in 2000 that is asserted for the first time as part of a re-filed action, is sufficiently close in character and nature of injury to an original case that focused upon a funds transfer that occurred in 2001 such that it can be considered to 'relate back' for purposes of the statute of limitations.

3. Whether Apollo, Divine's assignee, and therefore, a de facto creditor of the debtor company, may maintain a cause of action for unjust enrichment against another co-creditor of the same debtor company when the defendant co-debtor is alleged to have received nothing more than the re-payment of a valid and enforceable pre-existing debt."

For the following reasons, we answer all three certified questions in the affirmative.

BACKGROUND

In 1994, David Lasier founded TWS, Inc., a holding company, and Telecom Wireless Solutions, Inc., an Atlanta-based telecommunications company. Under the umbrella of TWS, Lasier also formed other affiliates and subsidiaries to acquire, develop, and operate wireless

networks, which included: TWS International, Inc. (TWS International); OPM Auction Co. (OPM); Blue Sky Communications, Inc.; Blue Sky Communications, L.L.C.; and Blue Sky International. We will refer to these seven corporate entities collectively as the "TWS Companies."

On December 1, 1997, Gelber Securities, Inc., and Telecom Wireless Solutions, Inc. (Telecom), executed a working capital line of credit agreement, pursuant to which Gelber Securities agreed to establish a $2,400,000 line of credit for Telecom. The credit line was secured by assets of Telecom but did not include assets of OPM. TWS, Inc., was not a party to this loan. However, Gelber Securities was a shareholder of TWS. One of Gelber Securities' principals was Brian Gelber, who was a member of the board of directors of TWS.

On December 31, 1997, Gelber Securities assigned all of its rights and obligations under the working capital line of credit agreement, including its right to repayment of any principal and interest, to Ice, LLC. The members of Ice, LLC, included Go, LLC, whose members in turn included Brian Gelber and his sons. Telecom subsequently drew almost the full balance of the $2.4 million credit line.

In 1999, the TWS companies purchased licenses, at a cost of less than $4 million, to operate wireless networks in West Virginia. OPM did not conduct any business operations, except to hold any licenses. The TWS companies hired an outside company, Divine Tower International Corporation (Divine), to design, develop, and construct the network. In May 1999, Divine and the TWS companies executed a letter of intent providing that Divine was to fund, develop, construct, and lease operating assets to the Blue Sky Companies in specific geographic

regions in West Virginia. OPM was awarded the West Virginia licenses, and subsequently the TWS Companies provided Divine with the authority to negotiate with the area telecommunications carriers. TWS International identified each area where it wanted Divine to place the TWS antennas by issuing geographical radiuses where wireless towers were to be located, called search area rings (SARs). The TWS companies gave Divine written approval of 129 primary sites. According to Apollo, the TWS companies and Divine orally agreed that Divine would receive a specific amount for its work on each SAR.

However, on July 21, 2000, the TWS Companies informed Divine that they were ceasing all operations relating to the West Virginia network, and instructed Divine to stop all work. On September 13, 2000, OPM submitted an invoice to Blue Sky Communications for $2,978,500 for the work performed by Divine in designing and engineering the West Virginia network, with 1.5% monthly interest after 30 days. On November 20, 2000, the maturity date of the working capital line of credit agreement, Telecom owed Ice, LLC, as Gelber Securities' assignee, $2.378 million in principal and accrued interest. Telecom and Ice, LLC, subsequently agreed to extend the maturity date to July 31, 2001. On June 29, 2001, OPM sold the West Virginia licenses to Key Communications, Inc., for approximately $14 million. OPM sent the majority of the proceeds of the sale to TWS, and wired $2,385,240 to Ice, LLC, in full repayment of the loan. Shortly thereafter, OPM dissolved. Neither OPM nor any of the other TWS companies paid Divine.

In 2002, Divine filed suit against the TWS companies in the United States District Court for the Southern District of Ohio, Eastern Division, captioned *DTIC International Corp. v. Blue Sky Communications, Inc., et al.*, Case No. 2:02-CV-00905. On April 13, 2004, the district court

granted Divine's uncontested summary judgment motion and entered judgment in favor of Divine and against all the TWS Companies in the amount of $4,968,351, plus prejudgment interest in the amount of $1,763,019, for a total judgment of $6,641,376.

The TWS companies did not pay Divine on the judgment, and Divine subsequently filed a chapter 11 bankruptcy petition. 11 U.S.C. 1101 *et seq.* (2006). Apollo was one of Divine's secured creditors. On December 12, 2004, the bankruptcy court approved Divine's plan of liquidation. As of that date, Apollo had a deficiency claim for its prepetition secured claim against Divine for loans in the amount of $20,646,438.60. Under the plan of liquidation, Apollo was assigned Divine's judgment against the TWS companies.

On June 23, 2005, Apollo filed an action in the circuit court of Cook County against the Gelber defendants and others, captioned *Apollo Real Estate Investment Fund IV, L.P. v. Brian Gelber, et al.*, Case No. 05 L 6954. Counts I and II stated claims against all defendants under the Illinois Uniform Fraudulent Transfer Act (740 ILCS 160/1 *et seq.* (West 2006)), and count III was a claim for breach of fiduciary duty against Brian Gelber. All three counts were based on the June 29, 2001, transfer of $2,385,240 to Ice, LLC, in repayment of the working capital line of credit, allegedly caused fraudulently by the Gelber defendants. The Gelber defendants' motion to dismiss was granted. On February 21, 2006, Apollo filed its first amended complaint, also setting forth claims for violations of the Illinois Uniform Fraudulent Transfer Act and breach of fiduciary duty. In its May 5, 2006, order, the circuit court granted the Gelber defendants' motion to dismiss Apollo's first amended complaint for failure to state a claim pursuant to section 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615 (West 2004)). The court further provided

in its dismissal order that Apollo had 28 days to amend its complaint. Apollo did not amend its complaint within the 28 days, nor did it appeal the dismissal. Nonetheless, on June 29, 2006, Apollo voluntarily dismissed its case without prejudice.

On May 17, 2007, Apollo filed the instant action in the circuit court of Cook County, again asserting claims for violations of the Illinois Uniform Fraudulent Transfer Act and breach of fiduciary duty, and adding an additional claim for unjust enrichment. The circuit court dismissed the complaint on October 24, 2007. In turn, Apollo then filed a first amended complaint alleging the same four counts. On February 7, 2008, the trial court dismissed counts I, II and III for failure to state a cause of action, but allowed the unjust enrichment claim to stand. This claim alleged that the Gelber defendants were unjustly enriched by the work Divine performed which increased the value of the West Virgina network licenses. As the assignee of the *Divine* judgment, Apollo alleged that it was now entitled to this payment.

The Gelber defendants filed additional motions to dismiss the unjust enrichment claim, alleging, *inter alia*: (1) Apollo lacked standing as assignee of Divine's judgment to assert Divine's claims for unjust enrichment against the Gelber defendants; and (2) the unjust enrichment claim for work performed in 1999 and 2000 was time-barred by the five-year statute of limitations and did not relate back to the 2005 case. On May 22, 2008, the circuit court denied the Gelber defendants' motion to dismiss the unjust enrichment claim. The Gelber defendants subsequently filed a motion for summary judgment, arguing that they could not be sued by Apollo because Apollo was a co-creditor of TWS, and also that there was no unjust enrichment because the payment to Ice, LLC, was for a valid preexisting debt. On February 26, 2009, the circuit court

6

1-09-1538

denied the Gelber defendants' motion for summary judgment.

Following the denial of the motion for summary judgment, the parties jointly presented the three questions for certification by the trial court. On June 2, 2009, the trial court certified the questions for interlocutory appeal after determining that its prior orders involved questions of law as to which substantial grounds for difference of opinion exist and that an immediate appeal could materially advance the ultimate termination of litigation. In turn, the Gelber defendants filed a petition for leave to appeal pursuant to Illinois Supreme Court Rule 308 (155 Ill. 2d R. 308) which we granted on July 13, 2009.

ANALYSIS

Supreme Court Rule 308 provides a remedy of permissive appeal for interlocutory orders where the trial court has deemed that they involve a question of law as to which there is substantial ground for difference of opinion and where an immediate appeal from the order may materially advance the ultimate termination of the litigation. 155 Ill. 2d R. 308. We apply a *de novo* standard of review to legal questions presented in an interlocutory appeal brought pursuant to Supreme Court Rule 308(a). *Anthony v. City of Chicago*, 382 Ill. App. 3d 983, 987, 888 N.E.2d 721, 725 (2008). Our review is strictly limited to the certified questions presented; we do not render any opinion on the propriety of any underlying rulings of the trial court. *Anthony*, 382 Ill. App. 3d at 987, 888 N.E.2d at 725.

I. Standing to Bring New Claims Against the Gelber Defendants

The first certified question is: "Whether an assignment, which expressly distinguishes between claims and judgments, confers standing on the assignee to enforce the monetary

7

judgment by asserting new claims unrelated to the judgment against parties not named in the underlying litigation." Apollo maintains that the surrounding circumstances indicate that the parties intended for Divine to receive an assignment of both the judgment and claims. Conversely, the Gelber defendants contend that Apollo does not have standing to enforce the *Divine* judgment against them because the assignment expressly distinguished between the *Divine* judgment and other claims, and because the Gelber defendants were neither parties to the underlying case nor named in the judgment.

Although Apollo maintains that the assignment contemplated that Apollo would have the right to assert new claims against other parties to satisfy the judgment, we disagree. As the Gelber defendants assert, Apollo's authorities on this point offer no support for that proposition and in fact are inapposite, as both cases involved the threshold determination of whether an assignment in fact even occurred. See *Rivan Die Mold Corp. v. Stewart-Warner Corp.*, 26 Ill. App. 3d 637, 325 N.E.2d 357 (1975); *Northwest Diversified, Inc. v. Desai*, 353 Ill. App. 3d 378, 818 N.E.2d 753 (2004).

Apollo also maintains that Illinois courts have interpreted assignments more broadly and cites as an example the assignment of promissory notes, which carries with it the assignment of mortgages secured by the note. See *Federal National Mortgage Ass'n v. Kuipers*, 314 Ill. App. 3d 631, 635, 732 N.E.2d 723, 727 (2000). However, an assignment of a mortgage or promissory note is readily distinguishable from the assignment of a judgment for money damages, typified in the proceedings below.

The Gelber defendants submit that Apollo cannot proceed on any claims because the

assignment itself distinguished between judgments and claims, providing for assignment to Apollo of certain other claims against unrelated parties in New York and California. However, we find it unnecessary to make such a distinction here. We need only look to the language of the assignment that was approved by the bankruptcy court as part of Divine's plan for liquidation, which specifically delineated the scope of the assignment:

> "Judgment obtained by creditor in litigation pending in the United States District Court, Southern District, of Ohio, styled <u>Divine Tower International Corporation v. Blue Sky Communications, Inc., et. al.</u>, Case No. 2:02-CV00905, in the original amount of $6,641,370."

It is clear from the express language of the district court's order that the assignment was only of the judgment for money damages in the *Divine* action. It is well settled that an assignment transfers to the assignee all the right, title or interest of the assignor in the thing assigned; thus, the assignee stands in the shoes of the assignor. *Brandon Apparel Group v. Kirkland & Ellis*, 382 Ill. App. 3d 273, 284, 887 N.E.2d 748, 756 (2008); *PRA III, LLC v. Hund*, 364 Ill. App. 3d 378, 382, 846 N.E.2d 965, 968 (2006). The assignee can obtain no greater right or interest than that possessed by the assignor. *Owens v. McDermott, Will & Emery*, 316 Ill. App. 3d 340, 350, 736 N.E.2d 145, 155 (2000). Thus, Apollo as assignee stands in the shoes of its assignor and cannot go beyond what it was assigned; namely, the judgment. Here, a judgment for money damages was assigned; nothing more, nothing less.

A "judgment" is the final determination of a court upon matters submitted to it in an action or proceeding; a judgment is the judicial act of the court. *Tri-G, Inc. v. Burke, Bosselman*

& *Weaver*, 222 Ill. 2d 218, 256, 856 N.E.2d 389, 411 (2006). "Judgment" has a well settled definition as legal term: it is a court's official decision with respect to the rights and obligations of parties to a lawsuit. *People ex rel. Department of Public Aid v. Smith*, 212 Ill. 2d 389, 398, 818 N.E.2d 1204, 1209 (2004). "Under the doctrine of full faith and credit, the forum court will not rehear a case on its merits because the judgment is *res judicata*." *Firstar Bank Milwaukee, NA v. Cole*, 287 Ill. App. 3d 381, 383, 678 N.E.2d 668, 670 (1997), quoting *All Seasons Industries, Inc. v. Gregory*, 174 Ill. App. 3d 700, 703, 529 N.E.2d 25, 26 (1988). Moreover, the principles of *res judicata* dictate that "the nature and amount of the judgment, together with all defenses that could have been raised in the original court, are foreclosed." *Firstar Bank Milwaukee, NA*, 287 Ill. App. 3d at 383, 678 N.E.2d at 670, citing *Falcon v. Faulkner*, 209 Ill. App. 3d 1, 13, 567 N.E.2d 686, 694 (1991), and *Dawson v. Duncan*, 144 Ill. App. 3d 532, 537, 494 N.E.2d 900, 903 (1986). Thus, the obligation and liability to pay on the *Divine* judgment based on the cause of action alleged in the *Divine* case has already been adjudicated and cannot be relitigated. Any new claims related to liability cannot be raised.

However, although Apollo is bound by the judgment it acquired, it is not prohibited from seeking to enforce it. See *SDS Partners, Inc. v. Cramer*, 305 Ill. App. 3d 893, 897, 713 N.E.2d 239, 241 (1999). The enforcement of judgments rendered by courts outside the State of Illinois is governed under two uniform statutes: the Uniform Foreign Money-Judgments Recognition Act (Recognition Act) (735 ILCS 5/12-618 *et seq.* (West 2002)), and the Uniform Enforcement of Foreign Judgments Act (Enforcement Act) (735 ILCS 5/12-650 *et seq.* (West 2002)). The Recognition Act recognizes judgments of a foreign state, which is any governmental unit other

than the United States, or any state (735 ILCS 5/12-618(a) (2002)), and provides that as long as a foreign judgment is final and conclusive and enforceable where rendered, it is enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit (735 ILCS 5/12-619, 12-620 (West 2002)). The Enforcement Act governs enforcement of foreign judgments of a court of the United States or of any other court that is entitled to full faith and credit in Illinois (735 ILCS 5/12-651 (West 2002)). However, the statute provides that "[t]he right of a judgment creditor to bring an action to enforce his judgment instead of proceeding under this Act remains unimpaired." 735 ILCS 5/12-656 (West 2002). See *PRA III, LLC*, 364 Ill. App. 3d at 382, 846 N.E.2d at 968.

Here, Apollo chose to bring an action to enforce the *Divine* judgment instead of proceeding under the Enforcement Act. As a general rule, in Illinois, a judgment for a sum certain in money is "a good cause of action" that evidences an indebtedness upon which a new action for debt may lie. *Green v. Alton Telegraph Printing Co.*, 107 Ill. App. 3d 755, 763, 438 N.E.2d 203, 208 (1982). "No rule of law is better settled than the one; that an action of debt is maintainable on a judgment of a court of record." *Greathouse v. Smith*, 4 Ill. 541 at 541 (1842).

This certified question further asks whether such an action to collect on an indebtedness evidenced by a judgment can be brought against parties not named in the underlying litigation. It is axiomatic that the answer must be yes; otherwise defendants would be allowed to fraudulently transfer funds to third parties to avoid paying judgments. Such causes of action may be statutory, as, for example, actions brought under the Uniform Fraudulent Transfer Act (740 ILCS 160/1 *et seq*. (West 2006)), or under common law and equity, such as actions for unjust enrichment, which

1-09-1538

are precisely two of the claims Apollo brought in the instant case.[1]  Thus, we answer the first certified question in the affirmative.

## II.  Relation Back of Unjust Enrichment Claim

The second certified question is: "Whether, under the standard articulated by the Illinois Supreme Court in *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343 (Ill. 2008), a cause of action for unjust enrichment relating to construction work performed in 2000 that is asserted for the first time as part of a re-filed action, is sufficiently close in character and nature of injury to an original case that focused upon a funds transfer that occurred in 2001 such that it can be considered to 'relate back' for purposes of the statute of limitations."  Apollo maintains that the unjust enrichment claim arises out of the same June 29, 2001, transfer that was the basis of its original complaint.  The Gelber defendants submit that the time gap, the nature of the claims, and the injuries involved are totally separate such that the 2007 complaint does not relate back to the 2005 complaint.

Initially we note that some confusion regarding the date of accrual of claim may arise because the certified question refers to the claim as based on the construction work performed in 2000.  However, it is clear that, as against the Gelber defendants, the first amended complaint alleges unjust enrichment based on the transfer of funds from Gelber Securities to Ice, LLC, on June 29, 2001.  The allegations regarding nonpayment for the work performed by Divine on the network are only against the TWS Companies.  The date of the occurrence for the claim asserted

---

[1]  We analyze the propriety of bringing an unjust enrichment action against third parties, and against the Gelber defendants specifically, in answer to the third certified question.

12

against the Gelber defendants is thus June 29, 2001, for purposes of calculating time period allowed under the statute of limitations. A cause of action for unjust enrichment is governed by Illinois's five-year statute of limitations. 735 ILCS 5/13-205 (West 2006). The statute of limitations expired on June 29, 2006. Apollo's original complaint was filed on June 23, 2005, well within the limitations period. Apollo first brought its cause of action for unjust enrichment in its refiled action pursuant to section 13-217 of the Illinois Code of Civil Procedure (Code) (725 ILCS 5/13-217 (West 2006)) on May 17, 2007. That initial complaint was dismissed, and Apollo filed an amended complaint, again alleging the unjust enrichment claim which was initially brought in the refiled action.

We are asked to determine whether the claim for unjust enrichment in the refiled action relates back to the 2005 case pursuant to section 2-616 of the Code under the test enunciated by our supreme court in *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 882 N.E.2d 583 (2008): "[T]he key inquiry is whether the cause of action asserted in the newly filed pleading 'grew out of the same transaction or occurrence' set up in the pleadings that were filed within the limitations period." *Porter*, 227 Ill. 2d at 346, 882 N.E.2d at 584, quoting 735 ILCS 5/2-616(b) (West 2004).

However, we determine that section 2-616 does not apply, and therefore, a relation-back analysis under *Porter* would be inappropriate. In *Bryson v. New America Publications, Inc.*, 174 Ill. 2d 77, 106-07, 672 N.E.2d 1207, 1223 (1996), cited by the Gelber defendants, our supreme court held an amended pleading in a refiled action related back to the original pleading under section 2-616. In *Bryson*, the original action in federal court had been dismissed for lack of

diversity jurisdiction, and the court examined the new claims in the refiled case under section 2-616. *Bryson*, 174 Ill. 2d at 105, 672 N.E.2d at 1222.

However, *Bryson* is distinguishable from the case at bar. The new claims in *Bryson* were raised in an amended pleading, which was filed after the extended limitations period for the refiled action under section 13-217 had expired. Here, on the other hand, the new claim for unjust enrichment was brought in the initial pleading in this refiled action, which was filed within the extended one-year period under section 13-217.

Section 2-616 governs amendments and not refiled actions. See *Berkey v. Treasure Island Farmers Market, Inc.*, 172 Ill. App. 3d 67, 69, 526 N.E.2d 644, 645 (1988). Section 2-616 "is titled 'Amendments' and is concerned only with amendments and when they should be permitted." *Berkey*, 172 Ill. App. 3d at 69, 526 N.E.2d at 645.

The unjust enrichment claim brought here in the refiled action is not an amendment of the earlier 2005 action. An action that is refiled pursuant to section 13-217 is a new action, not a reinstatement of the old action. *Dubina v. Mesirow Realty Development, Inc.*, 178 Ill. 2d 496, 504, 687 N.E.2d 871, 875 (1997). The 2007 case before us therefore is a new lawsuit and not an amended pleading under section 2-616(b) of the Code (735 ILCS 5/2-616(b) (West 2006)). The unjust enrichment claim also cannot be construed as a new claim in an amendment to the 2007 action, as it was first brought in that refiled action. Therefore, we determine that, as the unjust enrichment claim was not brought in an amended pleading, section 2-616 does not apply. Refilings are governed by section 13-217 of the Code (735 ILCS 5/13-217 (West 2006)), and not section 2-616 (735 ILCS 5/2-616 (West 2006)).

14

1-09-1538

Nonetheless, we must analyze the question as to whether under section 13-217, the refiling was timely. The enactment provides that following certain dispositions a plaintiff "may commence a new action within one year or within the remaining period of limitation, whichever is greater." 735 ILCS 5/13-217 (West 2006). Section 13-217 is a limitations saving statute, enacted for the purpose of facilitating the disposition of litigation on the merits and avoiding its frustration upon grounds unrelated to the merits. 735 ILCS 5/13-217 (West 2006); *Case v. Galesburg Cottage Hospital*, 227 Ill. 2d 207, 215, 880 N.E.2d 171, 176 (2007). The provision allows a party to refile when the original action was disposed of on the following grounds:

"if judgment is entered for the plaintiff but reversed on appeal, or if there is a verdict in favor of the plaintiff and, upon a motion in arrest of judgment, the judgment is entered against the plaintiff, or the action is voluntarily dismissed by the plaintiff, or the action is dismissed for want of prosecution, or the action is dismissed by a United States District Court for lack of jurisdiction, or the action is dismissed by a United States District Court for improper venue, then, whether or not the time limitation for bringing such action expires during the pendency of such action, the plaintiff, his or her heirs, executors or administrators may commence a new action within one year or within the remaining period of limitation, whichever is greater." 735 ILCS 5/13-217 (West 1994).

The resolution of this question is somewhat complicated due to the procedural history of the case *sub judice*. Here Apollo voluntarily dismissed its case after the court on May 5, 2006, had already entered an involuntary dismissal for failure to state a claim pursuant to section 2-615. However, the circuit court's order stated it was without prejudice and provided Apollo had 28

15

days to amend its complaint. Apollo did not amend its complaint within the 28 days, nor did it file any other motion or pleading within that time. Apollo also did not appeal the dismissal. On June 29, 2006, well over a month after the expiration of the 28 days, Apollo had an order entered voluntarily dismissing the case stating it also was without prejudice.

We note that there is some tension in Illinois law regarding the nature of involuntary dismissal orders granted leave to amend a complaint. There is a great weight of authority holding that an order dismissing a complaint is not final until the trial court enters an order dismissing the suit, and does so with prejudice. See *Wick Building Systems, Inc. v. Bunning*, 107 Ill. App. 3d 61, 62-63, 437 N.E.2d 341, 342 (1982) (though acknowledging that the argument that a dismissal order with leave to amend is final if a plaintiff does not amend was "appealing," court held that the "better" rule to apply was that an order is not final until a subsequent order dismissing the suit is entered); *Jackson v. Victory Memorial Hospital*, 387 Ill. App. 3d 342, 352, 900 N.E.2d 309, 318 (2008) (an order dismissing a complaint is not final until the trial court enters an order dismissing the suit and does so with prejudice); *Piagentini v. Ford Motor Co.*, 387 Ill. App. 3d 887, 895, 901 N.E.2d 986, 994 (2009) (an order dismissing a complaint but granting leave to replead is not final until the trial court enters an order dismissing the suit with prejudice).

Moreover, a long-standing line of precedent instructs that where the time allowed for amendment of a complaint after dismissal expires without such amendment, the trial court retains jurisdiction over the case, thus preventing the operation of the dismissal order as a final judgment. See *Martin v. Marks*, 80 Ill. App. 3d 915, 918, 400 N.E.2d 711, 713 (1980) (order of dismissal was not final and appealable since it granted plaintiff leave to file an amended complaint within 30

16

days, and since no final order was entered by the trial court, it retained jurisdiction although the 30 days allowed to amend had expired); *Richardson v. Economy Fire & Casualty Co.*, 126 Ill. App. 3d 520, 524, 467 N.E.2d 317, 320 (1984) (where time within which to amend dismissed complaint has expired without such amendment, the trial court nevertheless retains jurisdiction), *rev'd on other grounds*, 109 Ill. 2d 41, 485 N.E.2d 327 (1985). However, there is, to be sure, authority which holds to the contrary. See, *e.g.*, *Director of Insurance ex rel. State v. A&A Midwest Rebuilders, Inc.*, 383 Ill. App. 3d 721, 891 N.E.2d 500 (2008) (order of dismissal may be final even though it is not with prejudice unless there is a request to amend, and all dismissals, whether with or without prejudice, become final and unalterable judgments under Illinois law after 30 days unless a party takes some action), and cases cited therein.

Further, our supreme court's decision in *Smith v. Central Illinois Regional Airport*, 207 Ill. 2d 578, 802 N.E.2d 250 (2003), lends support to the contention that when a period for leave to amend given in dismissal orders expires without such amendment, the involuntary dismissal should be considered a final adjudication on the merits, which then would not be within the purview of section 13-217. In *Smith*, the dismissal order was without prejudice and the plaintiff was granted 60 days' leave to amend the complaint. The plaintiff did not amend, and instead filed the voluntary dismissal before the expiration of the time allowed to amend. *Smith*, 207 Ill. 2d at 588-89, 802 N.E.2d at 256. The supreme court held that the trial court should have allowed the plaintiff's involuntary dismissal because it was within the period given for leave to amend. In analyzing the nature and effect of the dismissal order, and subsequent action, the court stated that "the granting of defendants' section 2-615 motion would be considered to be *with* prejudice only

*after* the expiration of the 60-day period." *Smith*, 207 Ill. 2d at 588-89, 802 N.E.2d at 256-57. One might conclude from this language that, conversely*,* in situations manifested by the facts at bar where parties file a voluntary dismissal after the expiration of the leave to amend period, the dismissal order would be considered with prejudice and a final adjudication. However, the supreme court did not reach the precise issue presented here. Further, it has not overruled the prior Illinois cases holding that dismissal orders granting leave to replead are not final until the trial court enters an order dismissing the suit with prejudice, and where the time to amend expires the trial court still retains jurisdiction.

We recently held that whether a dismissal for failure to state a claim with leave to amend is a final judgment and adjudication upon the merits depends on the entire context of the dismissal order. *Kiefer v. Rust-oleum Corp.*, No. 1-08-2879, slip op. at 19 (Aug. 24, 2009). In *Kiefer*, at the hearing on the motion to dismiss the court expressly found that the plaintiff could not plead any set of facts that would allow him to recover on his strict product liability claims. *Kiefer*, slip op. at 20. Thus, the substance of the order showed it was a final adjudication upon the merits of those claims. *Kiefer*, slip op. at 20. The involuntarily dismissal therefore became a final judgment after there was no appeal, and a subsequent voluntary dismissal barred any claims on the same set of operative facts in the second action, based on *res judicata*. *Kiefer*, slip op. at 19.

Under the recent guiding authority of *Kiefer*, it appears that the dismissal of the 2005 action was not intended to be a final adjudication on the merits, as the court merely stated that "the First Amended Complaint needs more factual specificity," and then gave Apollo 28 days to amend. Unlike *Kiefer*, the court here allowed Apollo the opportunity to plead facts that would

18

allow it to recover on its claims. Thus, we cannot say with clarity that the involuntary dismissal with leave to amend operated as a final judgment and adjudication upon the merits such that section 13-217 would not apply.

Instead, we deem the voluntary dismissal to be the effective order disposing of the 2005 action. Here Apollo voluntarily dismissed its case after the court in its May 5, 2006, order had already entered the order dismissing the complaint. The circuit court's dismissal order stated it was without prejudice and provided Apollo had 28 days to amend its complaint. Although Apollo did not amend its complaint within the 28 days or file any other motion or pleading within that time, Apollo did file a voluntary dismissal without prejudice on June 29, 2006, and the court had not yet entered a final judgment order disposing of the action. Thus, we determine that under the weight of current precedent the involuntary dismissal was not a final judgment, and the later-filed voluntary dismissal was effective.

As such, our analysis is indeed governed by section 13-217, which specifically includes voluntary dismissals (735 ILCS 5/13-217 (West 2006)), and we conclude that this refiled action was timely filed and the unjust enrichment claim was timely raised within one year after the voluntary dismissal. We further note our supreme court's pronouncement in *Bryson* that "[b]oth section 13-217 and section 2-616(b) are remedial in nature and should be liberally construed in favor of hearing the plaintiff's claim." *Bryson*, 174 Ill. 2d at 106, 672 N.E.2d at 1223. Therefore, we answer the second certified question in the affirmative.

### III. Unjust Enrichment Claim Against Co-Creditor Defendants

The third certified question is: "Whether Apollo, Divine's assignee, and therefore, a *de*

19

*facto* creditor of the debtor company, may maintain a cause of action for unjust enrichment against another co-creditor of the same debtor company when the defendant co-debtor is alleged to have received nothing more than the re-payment of a valid and enforceable pre-existing debt." Apollo argues that it could assert the unjust enrichment claim against the Gelber defendants because the loan was not repaid by the original debtor. The Gelber defendants maintain that Apollo cannot maintain an unjust enrichment cause of action against a co-creditor.

Whereas we determined in answer to the first certified question that Apollo generally has standing to bring a claim against the Gelber defendants to enforce the debt evidenced by the *Divine* judgment it was assigned, the question here is whether Apollo has standing to bring an action for unjust enrichment against the Gelber defendants for the debt evidenced by the assigned judgment. We recognize that, generally, an action on a judgment can only be brought against the defendant of record in the judgment or his successor in interest, not against an entity or person not named in judgment. See *Peterson v. Superior Bank FSB*, 242 Ill. App. 3d 1090, 611 N.E.2d 1139 (1993) (judgment creditor could not enforce judgment against undisclosed principal where previously entered judgment was entered against alleged agent). See also *Sunseri v. Moen*, 382 Ill. App. 3d 821, 832-33, 888 N.E.2d 713 (2008) (affidavit to register a foreign judgment against an insolvent partnership could not be amended to name a general partner as a judgment debtor because the foreign judgment had been entered against the partnership only).

The *Divine* judgment was entered against the TWS corporate entities, and we acknowledge that the Gelber defendants collectively are comprised of wholly separate corporate entities and individuals. It is of course well settled that a corporation is a legal entity that exists

20

separately and distinctly from its shareholders, officers, and directors, who generally are not liable for the corporation's debts. *Peetoom v. Swanson*, 334 Ill. App. 3d 523, 526, 778 N.E.2d 291, 294 (2002). One of the primary purposes of doing business as a corporation is to insulate stockholders from unlimited liability for corporate activity. *Peetoom*, 334 Ill. App. 3d at 526, 778 N.E.2d at 294. Limited liability will ordinarily exist even though the corporation is closely held or has a single shareholder. *Peetoom*, 334 Ill. App. 3d at 526, 778 N.E.2d at 294. However, a judgment creditor may initiate an action to pierce the corporate veil to enforce a judgment against a corporation's shareholders. *Peetoom*, 334 Ill. App. 3d at 527, 778 N.E.2d at 294-95.

Moreover, the doctrine of unjust enrichment underlies a number of legal and equitable actions and remedies. *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 160, 545 N.E.2d 672, 679 (1989). To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience. *HPI Health Care Services, Inc.*, 131 Ill. 2d at 160, 545 N.E.2d at 679. In *HPI Health Care Services, Inc.*, the Illinois supreme court recognized that "[m]any unjust-enrichment cases involve 'situations in which the benefit the plaintiff is seeking to recover proceeded directly from him to the defendant.' [Citations.]" However, a plaintiff may pursue a cause of action for unjust enrichment where the benefit was transferred to the defendant by a third party where (1) the benefit should have been given to the plaintiff, but the third party mistakenly gave it to the defendant instead; (2) the defendant procured the benefit from the third party through some type of wrongful conduct; or (3) the plaintiff for some other

reason had a better claim to the benefit than the defendant. *HPI Health Care Services, Inc.*, 131 Ill. 2d at 161-62, 545 N.E.2d at 679.

In *HPI Health Care Services, Inc.*, similar to the case at bar the plaintiff also sought recovery of a benefit that was transferred to the defendant by another party. In *HPI Health Care Services, Inc.*, the plaintiff pharmaceutical company brought a claim for unjust enrichment against Centerre, for rental payments it received from Mt. Vernon Hospital, a third party, while HPI's pharmaceutical goods and services remained unpaid by the hospital. HPI's claim was based on allegations that Centerre, "requested" the appointment of a member to the hospital's board of trustees, and who maintained that rental payments be made to Centerre, rather than HPI. *HPI Health Care Services, Inc.*, 131 Ill. 2d at 160-61, 545 N.E.2d at 679. However, our supreme court held that the allegation that Centerre "requested" the appointment member of the board of trustees was insufficient to establish that he was Centerre's agent, and thus failed to sufficiently allege that Centerre's conduct was wrongful. *HPI Health Care Services, Inc.*, 131 Ill. 2d at 164, 545 N.E.2d at 680. Thus, HPI failed to state a cause of action for unjust enrichment. The supreme court also held that HPI's complaint was insufficient in that it failed to allege that Centerre's conduct in procuring payments from Mt. Vernon was wrongful, or that HPI's right to receive payments from Mt. Vernon was superior to the claim of Centerre. *HPI Health Care Services, Inc.*, 131 Ill. 2d at 162, 545 N.E.2d at 679.

Nonetheless, in applying *HPI Health Care Services, Inc.*, a different result obtains because Apollo alleges it should have rightfully received funds that were fraudulently transferred to the Gelber defendants. As distinguished from the plaintiff in *HPI Health Care Services, Inc.*, Apollo

further alleged that the Gelber defendants were insiders of the third party corporation that owed payment to Divine, and that the transfer of funds to defendants did not constitute the mere repayment of a loan. Thus, Apollo has sufficiently stated a cause of action for unjust enrichment. Therefore, we answer the third certified question in the affirmative.

## CONCLUSION

For all of the foregoing reasons, we answer all three certified questions in the affirmative.

Certified questions answered; cause remanded.

TULLY and FITZGERALD SMITH, JJ., concur.