# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**In re B.B., 2011 IL App (4th) 110521**

---

| | |
|---|---|
| Appellate Court Caption | In re: B.B. and K.B., Minors, CHASTITY HOPE WALLACE, Petitioner-Appellant, v. MICHAEL J. BRANSON, Respondent-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-11-0521 |
| Filed | October 28, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In proceedings on a petition to establish a father-child relationship between respondent and petitioner's youngest child and for petitioner's custody of the youngest child and an older child acknowledged by respondent as his, the trial court's judgment awarding custody of both children to respondent was upheld, notwithstanding petitioner's contention, *inter alia*, that one or both of the trial court's earlier child-support orders constituted a custody judgment that limited respondent's right to seek a modification within two years, since neither of those orders constituted a custody judgment under section 14(a)(2) of the Parentage Act, respondent's petition was for an initial custody judgment, and the award of custody to respondent was not against the manifest weight of the evidence. |
| Decision Under Review | Appeal from the Circuit Court of Edgar County, No. 02-F-22; the Hon. Steven L. Garst, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Ramona Sullivan, of Land of Lincoln Legal Assistance Foundation, Inc., of Charleston, for appellant.

Priscilla Ragle Ebdon, of Ebdon Law Office, of Charleston, for appellee.

Panel          JUSTICE TURNER delivered the judgment of the court, with opinion. Justices McCullough and Cook concurred in the judgment and opinion.

## OPINION

¶ 1       Petitioner, Chastity Hope Wallace, appeals the Edgar County circuit court's May 2011 judgment, awarding custody of the parties' two minor children to respondent, Michael J. Branson. On appeal, petitioner argues (1) the court's May 12, 2010, child-support order constituted a custody judgment; (2) respondent should not have been allowed to seek a modification of custody within two years of the May 2010 child-support order; (3) the court erred by finding a change in the minor children's circumstances occurred; and (4) respondent failed to prove a modification of custody was in the minor children's best interests. We affirm.

¶ 2                         I. BACKGROUND

¶ 3       In December 2002, petitioner filed a petition against respondent to establish a father-child relationship and for custody of their minor children. The petition alleged the parties had one child, B.B. (born November 1999), and she was pregnant with another child. In February 2003, respondent filed an answer, denying paternity of the unborn child, and a motion regarding temporary child support. The child-support motion noted a plenary order of protection had been entered on October 24, 2002, requiring respondent to pay petitioner $100 a week in child support. Wallace v. Branson, No. 02-OP-69 (Cir. Ct. Edgar Co.). That same month, petitioner filed a motion for a paternity test, noting the unborn child was due to be born in late March 2003. On March 3, 2003, the trial court held a hearing and ordered respondent to pay $58 per week in temporary child support, retroactive to February 14, 2003. The court also granted petitioner's request for paternity testing. K.B. was born on March 18, 2003. A written temporary child-support order was entered on March 25, 2003, which provided respondent was also to pay 20% of his net income from self-employment. A May 2003 paternity test showed respondent was K.B.'s father.

¶ 4       At a June 29, 2004, hearing, the parties announced they were back together. The court (1) found the custody petition was now moot, (2) vacated the temporary child-support order, and (3) granted the petition to establish a father-child relationship as to both B.B. and K.B.

¶ 5        In January 2010, the Illinois Department of Healthcare and Family Services (Department) filed (1) a petition to intervene and (2) a petition for "modification" of child support. In March 2010, the trial court granted the Department's petition to intervene. The next month, respondent filed an answer to the Department's child-support petition. Respondent noted a court order had not assigned custody of the children to either party but petitioner currently has physical possession of the children. He also noted he (1) was currently in school and unemployed and (2) gave petitioner child support on a regular basis. At an April 14, 2010, hearing, the court ordered respondent to pay $57.26 per week in temporary child support. On May 12, 2010, the court held a hearing on permanent "modified" child support and set child support at $64.68 per week, effective May 14, 2010.

¶ 6        On June 1, 2010, respondent filed a petition for temporary and permanent custody of the minor children. Thereafter, petitioner filed a motion to dismiss the petition, asserting the April 2010 child-support order granted her custody of the minor children under section 14(a)(2) of the Illinois Parentage Act of 1984 (Parentage Act) (750 ILCS 45/14(a)(2) (West Supp. 2003)), and thus respondent's modification petition was within two years of the custody judgment and had to allege the minor children were seriously endangered in their present environment, which it did not. After a June 17, 2010, hearing, the trial court granted petitioner's motion to dismiss, finding the May 2010 child-support order was a custody judgment. Respondent then filed a motion to reconsider the court's dismissal. In August 2010, the court heard the reconsideration motion, found the June 2004 parentage order was a custody judgment, and gave respondent leave to file a modification-of-custody petition.

¶ 7        On August 31, 2010, respondent filed his petition for modification of custody. In October 2010, respondent filed an amended petition to modify custody. On March 16, 2011, the trial court commenced the trial on respondent's amended modification petition. Respondent testified on his own behalf and presented the testimony of (1) Jo Ellen Henson, the social worker at B.B.'s school; (2) Mona Babette Dillon, respondent's fiancée; (3) William Joseph Simpson, a friend of respondent's family who lived near respondent after the parties' separation; (4) Chris Branson, respondent's mother; (5) Jerry Thurman, respondent's brother-in-law; (6) Mary Catherine Winchester, a friend of respondent's parents; (7) Holly Thurman, respondent's sister; (8) Lisa Miller, respondent's cousin; (9) Jerry Branson, respondent's father; (10) petitioner, as an adverse witness; and (11) Karen Burkybile, the guardian *ad litem*. At respondent's request, the court also conducted *in camera* interviews of the minor children. Petitioner testified on her own behalf and presented the testimony of (1) Joyce Henriott, K.B.'s teacher; (2) Heidi Wallace, petitioner's aunt; (3) Stephanie Hovis, petitioner's cousin; and (4) Karen Winkler, petitioner's grandmother. We note the exhibits presented at the trial and the guardian *ad litem*'s report are not included in the record on appeal.

¶ 8        The following is a brief synopsis of the evidence presented at the trial. The minor children had lived in Paris, Illinois, all of their lives and that was where their maternal and paternal relatives also resided. After the parties' separation in 2006, respondent had the children three or four days a week. Sometime in 2008, respondent began having the children every other weekend. The parties presented conflicting evidence as to the reason for the decline in respondent's visitation. The minor children had attended the Paris District 95

schools since preschool, had the same medical clinic since birth, and had a free dentist in town. Petitioner admitted she had allowed the kids to go four years without seeing a dentist. Both minor children had good school attendance. Respondent had always been the party responsible for cutting the minor children's hair and trimming their nails. When interviewed by the trial court, both children stated they wanted to live with respondent. The guardian *ad litem* also recommended respondent receive custody of the minor children.

¶ 9        B.B. played the trumpet in the school band and was involved in a city basketball league. During the 2010-11 school year, B.B. started having behavioral concerns at school and his grades dropped. According to petitioner, B.B.'s grades had started to improve. About two weeks before the custody trial, B.B. threatened to kill himself at school. His school counselor testified he had anxiety from the court proceedings and the custody issues. B.B. also mentioned petitioner's alcohol usage. His school counselor referred him to Coles County Mental Health for a screening. Coles County Mental Health recommended B.B. receive individual and family counseling for a period of three months. Petitioner was working on getting counseling established for B.B. Respondent and some of his witnesses testified about B.B. being fearful of petitioner and expressing hatred toward her. The guardian *ad litem* also testified B.B. was upset and wanted out of petitioner's home. Petitioner and her witnesses testified B.B. showed affection for petitioner.

¶ 10        K.B. did not have any extracurricular activities. K.B. was a good student, a good child, and overall in good health. K.B. did have warts that petitioner admitted she did not consistently treat. She did not think the warts were a health concern but did admit a few of them were unsightly. The parties gave conflicting testimony on (1) whether K.B. had asthma and still needed breathing treatments, (2) the reason for the delay in treating his warts, and (3) whether petitioner properly treated his scabies.

¶ 11        In September 2009, the minor children were unsupervised in Sunset Park when acquaintances set a car on fire. The police asked the minor children to come to the police station to discuss the incident. Sunset Park was three blocks away from petitioner's apartment and across the railroad tracks.

¶ 12        When the parties separated, petitioner moved into a two-bedroom apartment in which she still resides. Petitioner admitted she was a smoker and smoked in the apartment and her car. Petitioner also admitted she drank alcohol in front of the minor children but not to excess. Moreover, petitioner acknowledged she could not stand respondent. At the time of trial, petitioner was a certified nursing assistant and worked from 6 a.m. to 2 p.m. She dropped the minor children off at Hovis's home on her way to work, and Hovis took the minor children to school. For a period of time in the fall of 2010, petitioner left B.B. alone in the apartment while she went to work, and B.B. walked himself to school. Prior to her current job, petitioner had worked at Brookstone Estates.

¶ 13        At the time of trial, petitioner was not dating anyone. Her last boyfriend was Justin, and he lived in Peoria, Illinois. In addition to Justin, petitioner had dated other men since her relationship with respondent. Petitioner denies one of her boyfriends, Jason Elledge, was abusive to her and the minor children but did state Elledge once hit her car with a baseball bat. According to respondent's evidence, the minor children had reported seeing petitioner

engaged in sexual activities with a man and had seen naked men in her bed. Petitioner denied those allegations. Petitioner was also alleged to have given B.B. a cellular telephone with nude photographs of her and explicit text messages. To her knowledge, petitioner stated the minor children had never seen nude photographs of her or any explicit text messages. Respondent raised numerous other allegations against petitioner that the trial court found were untrue or unsupported.

¶ 14    Petitioner's family members also used to smoke cannabis. Petitioner was unsure if her relatives had smoked cannabis in front of the minor children. When she was present with the minor children, she did not allow her relatives to smoke cannabis. Petitioner denied smoking cannabis.

¶ 15    At the time of trial, respondent had been engaged to Dillon for two years, and they rented a four-bedroom home in Charleston, Illinois. Dillon had four children but only her 12-year-old daughter lived with them. Respondent and Dillon had moved into the home around a month before the trial, and the minor children and Dillon's daughter now each had their own bedroom. This home is respondent's fourth home in two years. According to Dillon, she got along well with the minor children, and they got along well with her daughter. Dillon and respondent no longer smoked and drank alcohol. Additionally, respondent was in school from August 2009 to May 2010. In March 2011, he had been employed for four months, and Dillon had been unemployed for almost a year.

¶ 16    In February 2008, respondent pleaded guilty to harassment by telephone. People v. Branson, No. 08-CM-20 (Cir. Ct. Edgar Co.). His actions had been against petitioner and Elledge. The parties had each filed an order of protection against the other party before the original paternity action commenced.

¶ 17    In an April 7, 2011, letter, the trial court found the minor children's custody should be with respondent. The court found respondent had failed to prove a change in petitioner's circumstances but did prove a change in the minor children's circumstances as they were now older and B.B. was more aware of his surroundings and his world. In examining the minor children's best interests, the court noted, *inter alia*, (1) the lack of supervision for the minor children; (2) B.B.'s being upset, wanting out of petitioner's home, and threatening to kill himself two weeks before the custody trial; (3) the guardian *ad litem*'s recommendation the minor children be placed with respondent; (4) petitioner making inappropriate comments about respondent and his family in the minor children's presence; and (5) the minor children's desire to live with their father. The court also recognized the minor children had lived in Paris their entire lives, which was also where all of their relatives lived, and pointed out Charleston was less than 30 miles from Paris and the evidence showed the children had frequent contact with their relatives even when visiting respondent in Charleston. On May 23, 2011, the court entered its written order, awarding respondent custody of the minor children, giving petitioner reasonable visitation, and ordering petitioner to pay child support.

¶ 18    On June 15, 2011, petitioner filed a notice of appeal from the court's August 16, 2010, order and its May 23, 2011, judgment. On June 20, 2011, petitioner filed an amended notice of appeal, adding the special caption required by Illinois Supreme Court Rule 311(a)(1) (eff. Feb. 26, 2010). The amended notice of appeal complied with the requirements of Illinois

Supreme Court Rule 303 (eff. May 30, 2008), and thus this court has jurisdiction under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994).

¶ 19                                    II. ANALYSIS

¶ 20                          A. Section 14(a)(2) of the Parentage Act

¶ 21        Petitioner asserts the trial court's May 2010 permanent child support order was a judgment awarding her custody of the children under section 14(a)(2) of the Parentage Act (750 ILCS 45/14(a)(2) (West Supp. 2003)). Respondent disagrees, arguing the court correctly found under that section, the June 2004 paternity order was a judgment awarding petitioner custody of the minor children. This issue requires us to interpret section 14(a)(2) as a matter of first impression. We review *de novo* a question of statutory construction. See *Ries v. City of Chicago*, 242 Ill. 2d 205, 216, 950 N.E.2d 631, 637 (2011).

¶ 22        The fundamental rule of statutory construction requires courts to ascertain and give effect to the legislature's intent. *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 180, 950 N.E.2d 1136, 1146 (2011). The statutory language, given its plain and ordinary meaning, best indicates the legislature's intent. *Pappas*, 242 Ill. 2d at 180, 950 N.E.2d at 1146. In interpreting a statutory provision, courts evaluate the statute as a whole, "with each provision construed in connection with every other section." *Pappas*, 242 Ill. 2d at 180, 950 N.E.2d at 1146. When the statutory language is clear and unambiguous, a court must give effect to the statute's plain meaning without resorting to extrinsic statutory-construction aids. *Pappas*, 242 Ill. 2d at 180, 950 N.E.2d at 1146.

¶ 23        Section 14(a)(2) of the Parentage Act (750 ILCS 45/14(a)(2) (West Supp. 2003)) states the following:

"If a judgment of parentage contains no explicit award of custody, the establishment of a support obligation or of visitation rights in one parent shall be considered a judgment granting custody to the other parent. If the parentage judgment contains no such provisions, custody shall be presumed to be with the mother; however, the presumption shall not apply if the father has had physical custody for at least 6 months prior to the date that the mother seeks to enforce custodial rights."

¶ 24        The first sentence of section 14(a)(2) expressly states visitation rights or a support obligation in one parent contained in a *parentage judgment* must be treated as a custody judgment in favor of the other parent. See 750 ILCS 45/14(a)(2) (West Supp. 2003). However, the second sentence does not use the phrase "shall be considered a judgment granting custody." See 750 ILCS 45/14(a)(2) (West Supp. 2003). It merely provides a *presumption* the mother has custody of the children and even specifies a circumstance under which the presumption would not apply. See 750 ILCS 45/14(a)(2) (West Supp. 2003). "[A] presumption is a rule of law that requires the fact finder to take as established the existence of a fact, *i.e.*, the presumed fact, after certain other facts, *i.e.*, basic facts, have been established, unless sufficient evidence is introduced tending to rebut the presumed fact." *People v. Funches*, 212 Ill. 2d 334, 341, 818 N.E.2d 342, 347 (2004). On the other hand, a "judgment" is "a court's official decision with respect to the rights and obligations of parties to a lawsuit." *Apollo Real Estate Investment Fund, IV, L.P. v. Gelber*, 398 Ill. App. 3d 773,

779, 935 N.E.2d 949, 956 (2009). With section 14(a)(2), the statutory presumption exists because no action by a court existed to show a determination of the parties' custodial rights. Accordingly, we find the presumption contained in section 14(a)(2) of the Parentage Act does not constitute a custody judgment. Thus, in this case, since the court's June 2004 parentage judgment does not address support or visitation, that judgment does not constitute a custody judgment.

¶ 25 Respondent also highlights the trial court's finding petitioner signed the Department's verified petition to intervene, which stated respondent was the noncustodial parent obligated to support the children. Under the presumption of section 14(a)(2), petitioner was the custodial parent, making respondent the noncustodial parent. However, as stated, the existence of the presumption does not mean a custody judgment had been entered.

¶ 26 Petitioner contends the May 2010 permanent child-support order entered after the parentage judgment constitutes a custody judgment under the first sentence of section 14(a)(2). Similarly, respondent asserts the temporary child-support order in March 2003 was a custody judgment. However, section 14(a)(2) of the Parentage Act expressly applies to parentage judgments and does not address temporary child-support orders entered before the parentage judgment or support orders after a final parentage judgment. See 750 ILCS 45/14(a)(2) (West Supp. 2003). In this case, the trial court vacated the temporary child-support order and did not expressly reserve the issue of future child support (we note the court should have reserved the matter as such is required by section 14(a)(1) of the Parentage Act). Despite its title as a motion to "modify" child support, the Department's motion was one for an initial child-support order as there was nothing to modify since the temporary child-support order had been vacated. See *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 102, 776 N.E.2d 195, 200-01 (2002) (noting a motion's substance, not its title, determines the motion's character). Moreover, the trial court had not explicitly reserved the issue of child support in the parentage judgment, and thus the May 2010 order was not part of the parentage judgment. Accordingly, we find neither the May 2010 permanent child-support order nor the March 2003 temporary child-support order constituted a custody judgment under section 14(a)(2) of the Parentage Act.

¶ 27 Since a custody judgment did not exist when respondent sought custody of the parties' minor children, respondent's petition was for an initial custody judgment and not a modification of one.

¶ 28 B. Special Findings Applicable to Modifications of Custody

¶ 29 Petitioner next asserts (1) respondent should not have been permitted to seek modification of custody within two years of the May 2010 child-support order under section 610(a) of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (750 ILCS 5/610(a) (West 2010)) and (2) the evidence did not show a change in her circumstances or those of the minor children as required by section 610(b) of the Dissolution Act (750 ILCS 5/610(b) (West 2010)). However, we have found a custody judgment had not been entered in this case, and thus the provisions related to a modification of a custody judgment contained in section 610 of the Dissolution Act do not apply here. Accordingly, no reversible

error can occur in this case related to section 610 of the Dissolution Act, and thus we do not address these issues.

¶ 30                              C. Minor Children's Best Interests

¶ 31    In determining custody under the Parentage Act, courts are to apply the relevant provisions contained in the Dissolution Act. See 750 ILCS 45/14(a)(1) (West 2010). Section 602(a) of the Dissolution Act (750 ILCS 5/602(a) (West 2010)) requires courts to determine custody in accordance with the children's best interests by considering all relevant factors, including the 10 factors listed in the section. That is the same determination the trial court made under section 610(b) of the Dissolution Act (750 ILCS 5/610(b) (West 2010)) when it analyzed respondent's amended modification petition. Thus, we do not need to remand the cause for a new trial due to the incorrect characterization of respondent's petition and will review the trial court's best-interests findings.

¶ 32    On appeal, we give great deference to the trial court's best-interests findings because that court had a better position than we do "to 'observe the temperaments and personalities of the parties and assess the credibility of witnesses.' " *In re Marriage of Marsh*, 343 Ill. App. 3d 1235, 1239-40, 799 N.E.2d 1037, 1041 (2003) (quoting *In re Marriage of Stopher*, 328 Ill. App. 3d 1037, 1041, 767 N.E.2d 925, 928 (2002)). Thus, a reviewing court will not reverse a trial court's custody determination unless it (1) is against the manifest weight of the evidence, (2) is manifestly unjust, or (3) results from a clear abuse of discretion. *Marsh*, 343 Ill. App. 3d at 1240, 799 N.E.2d at 1041. Moreover, this court will not substitute its judgment for the trial court's and will find an abuse of discretion only when the trial court " 'acted arbitrarily without conscientious judgment or, in view of all the circumstances, exceeded the bounds of reason and ignored recognized principles of law so that substantial injustice resulted.' " Marsh, 343 Ill. App. 3d at 1240, 799 N.E.2d at 1041 (quoting *In re Marriage of Suriano*, 324 Ill. App. 3d 839, 846, 756 N.E.2d 382, 388 (2001)).

¶ 33    Petitioner argues the only best-interests factor that favored respondent was the minor children's preference to live with respondent (see 750 ILCS 5/602(a)(2) (West 2010)) and the trial court placed too much weight on that factor, especially given the minor children's ages. On the contrary, the court found several other factors favored respondent. As to a parent's willingness and ability to facilitate and encourage a close relationship between the children and the other parent (see 750 ILCS 5/602(a)(8) (West 2010)), the court noted the parties could not get along with each other and found substantial evidence of petitioner making inappropriate comments about respondent and his family in the minor children's presence, which "has an effect on the children over time." Thus, that factor also favored respondent, and a review of the trial transcripts supports the court's finding on that factor. Respondent and his relatives testified the minor children would mention the negative things petitioner and her relatives said about them.

¶ 34    The trial court also highlighted petitioner's lack of supervision of the minor children, which favored placing custody with respondent. Petitioner admitted she left B.B. home alone on more than one occasion from 5:30 a.m., when she left for work, until B.B. walked himself to school. Petitioner also testified she let the minor children go by themselves to Sunset Park,

which was several blocks away from their apartment. B.B. had a cellular telephone and was to call her every half hour and come home every hour. One time when the boys were unsupervised at the park, some other minors set fire to a car, and the minor children were questioned by the police about the incident.

¶ 35 Another important factor in this case was B.B.'s mental-emotional health. B.B. had threatened to kill himself at school two weeks before the custody trial. He expressed anxiety about the court proceedings and custody issues. Individual and family counseling was recommended for B.B. The guardian *ad litem* described B.B. as upset and tense. B.B. told the guardian *ad litem* he did not want to be in petitioner's home. The evidence showed B.B. expressed the same sentiment to the parties and his other relatives. Moreover, B.B.'s teacher had informed the school social worker B.B. had behavioral concerns at school that he did not have in the past.

¶ 36 Additionally, we note the trial court recognized the factors that favored petitioner, *i.e.*, her maintaining the same apartment for more than four years while respondent moved frequently and the fact the children had lived in Paris all of their lives and that was where all of their relatives lived. However, the court found those factors did not outweigh the factors favoring respondent, especially given that respondent's home was less than 30 miles away and the minor children had frequent contact with their relatives when visiting respondent's home.

¶ 37 Accordingly, we find the trial court properly considered the enumerated factors in section 602(a) of the Dissolution Act as well as the other relevant factors, and the court's award of custody to respondent is not against the manifest weight of the evidence, manifestly unjust, or the result of an abuse of discretion.

¶ 38                                        III. CONCLUSION
¶ 39 For the reasons stated, we affirm the Edgar County circuit court's judgment.

¶ 40 Affirmed.