In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00024-CV


______________________________




DUKE ENERGY FIELD SERVICES ASSETS, L.L.C., Appellant



V.



NATIONAL UNION FIRE INSURANCE COMPANY


 OF PITTSBURG, PA, Appellee




 


On Appeal from the 11th Judicial District Court


Harris County, Texas


Trial Court No. 2000-32668




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Chief Justice Cornelius



O P I N I O N



 Duke Energy Field Services Assets, L.L.C., appeals from a summary judgment rendered in
favor of National Union Fire Insurance Company. Duke is the current owner of a gas plant in Port
Arthur. Zaval-Tex Construction Company contracted with a former owner of the gas plant to
provide workers for the plant. Zaval-Tex purchased a liability insurance policy from National
Union. Rafael Chavez, an employee of Zaval-Tex, sued Duke for personal injuries. Duke requested
that National Union defend it, and National Union refused. Duke sued National Union, seeking a
declaratory judgment that National Union was obligated to defend it in Chavez's suit. The question
is whether Duke was an "additional insured" under the insurance policy issued by National Union
to Zaval-Tex. The trial court granted National Union's motion for summary judgment. The trial
court based its summary judgment on its conclusion that Duke was not an additional insured within
the terms of Zaval-Tex's policy because there was no "written contract" between Duke and Zaval-Tex as required by National Union's policy. (1)

 Zaval-Tex's policy contains the following provision:

 It is agreed that Additional Insureds are covered under this policy as required by
written contract, but only with respect to liabilities arising out of the operations
performed by the Named Insured. 


(Emphasis in the original).


Both parties agree that this language means that if Zaval-Tex had a written contract to provide
construction work for another company, and if that company required Zaval-Tex to obtain insurance,
National Union's policy would provide that coverage. National Union takes the position that there
is no written contract between Zaval-Tex and Duke containing language that requires insurance
coverage, and therefore, National Union is not required to provide a defense for Duke in Chavez's
lawsuit.

 The summary judgment proof shows that Zaval-Tex had provided workers to do maintenance
and construction work at the gas plant, and had done so since the mid-1980's. In 1994, Zaval-Tex
entered into a written contract with a former owner of the gas plant, Centana Intrastate Pipeline
Company. That contract required Zaval-Tex to obtain insurance coverage to protect Centana.
National Union does not deny that this written contract sufficed to make Centana an additional
insured as provided by the policy. At that time, Centana was a corporate subsidiary of PanEnergy
Corporation. 

 At some point during the next two years, the Centana subsidiary ceased to operate the facility,
and another PanEnergy subsidiary, PanEnergy Field Services, Inc., began operating the plant. In
June 1997, Duke purchased PanEnergy Corporation. On that purchase, Duke changed the name of
PanEnergy to Duke Energy Field Services, Inc. (2) The contract between Zaval-Tex and Centana was
never terminated or amended, and Zaval-Tex continued providing the same services to the plant for
the new owner. 

 According to James Rintamaki, the general manager of east gulf coast operations for Duke,
whose affidavit is attached to Duke's motion for summary judgment, the following sequence of
events occurred in connection with the ownership of the plant. Centana changed its name to ANGC
Corporation, which then changed its name to PanEnergy Services. In 1996 PanEnergy Services
assigned its ownership of the plant to PanEnergy Field Services, Inc. In June 1997, Duke acquired
PanEnergy Corporation, including ANGC. Rintamaki also stated that Centana was and still remains
a part of the PanEnergy family of companies-which is now part of Duke. 

 Rintamaki also stated that Zaval-Tex had secured and sent to PanEnergy a "Certificate of
Liability Insurance" showing PanEnergy as an additional insured, and that Duke relied on that
certificate as proof that Zaval-Tex had complied with its contractual requirement to name PanEnergy
as an additional insured. A copy of that document is attached to the summary judgment motion. It
was produced by the insurance agency, lists National Union as the company affording coverage, and
specifies that PanEnergy Field Services, Inc. is an additional insured on the policy. 

 In its motion for summary judgment, Duke generally argued that as the purchaser of the
property, it succeeded to the rights and stood in the position of its predecessors and that nothing
reflected that any party had repudiated any portion of the contract. Duke also contends that because
Zaval-Tex was a party to the contract, and because Duke evidenced its acceptance of that contract
by acting under it and continuing to employ Zaval-Tex, Duke became a party to the contract. Under
that theory, the contract would continue as a written contract between Duke and Zaval-Tex.

 When one business entity is acquired in its entirety by another, in the absence of specific
terms to the contrary, both the liabilities and assets of the acquired company are transferred to the
purchaser. (3) The stipulations reflect that Duke did not simply purchase the plant from PanEnergy,
but purchased PanEnergy itself. A successor corporation is typically invested with the rights and
assumes the burdens of the predecessor corporation. See Procter v. Foxmeyer Drug Co., 884 S.W.2d
853 (Tex. App.-Dallas 1994, no writ); Volvo Petroleum, Inc. v. Getty Oil Co., 717 S.W.2d 134 (Tex.
App.-Houston [14th Dist.] 1986, no writ); Reuben H. Donnelley Corp. v. McKinnon, 688 S.W.2d
612 (Tex. App.-Corpus Christi 1985, writ ref'd n.r.e.). Similarly, when a subsidiary enters into a
contract and that subsidiary is then merged into a parent corporation, the contracts of the subsidiary
are treated as contracts with the parent. See TXO Prod. Co. v. M. D. Mark, Inc., 999 S.W.2d 137
(Tex. App.-Houston [14th Dist.] 1999, pet. denied).

 In order to be entitled to summary judgment in this case, National Union was required to
establish that there was no genuine issue of material fact and that it was entitled to judgment as a
matter of law. Tex. R. Civ. P. 166a(c); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671
(Tex. 1979); Baubles & Beads v. Louis Vuitton, S.A., 766 S.W.2d 377 (Tex. App.-Texarkana 1989,
no writ). The question on appeal is whether the summary judgment proof conclusively establishes
that the movant is entitled to summary judgment. Gonzalez v. Mission Am. Ins. Co., 795 S.W.2d
734, 736 (Tex. 1990). Because the movant bears the burden of showing the absence of an issue of
fact, all conflicts in the summary judgment evidence are disregarded, evidence favorable to the
nonmovant is taken as true, and all doubts as to the existence of a genuine issue of material fact are
resolved in favor of the nonmovant. Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546 (Tex. 1985). 
 There are three legal theories which, if supported by the facts, would make Duke a party to
the contract with Zaval-Tex: (1) through purchases, mergers, and/or name changes, Duke succeeded
to the rights and liabilities of Centana. See Thompson v. N. Texas Nat'l Bank, 37 S.W.2d 735 (Tex.
Comm'n App. 1931) (opinion approved); Procter v. Foxmeyer Drug Co., 884 S.W.2d at 861;
Enchanted Estates Cmty. Ass'n v. Timberlake Improvement Dist., 832 S.W.2d 800, 802 (Tex.
App.-Houston [1st Dist.] 1992, no writ); (2) Duke and Zaval-Tex by their actions agreed to adopt
the written contract between Centana and Zaval-Tex as their contract and acted pursuant to it. See 
Simmons & Simmons Constr. Co. v. W. L. Rea, 155 Tex. 353, 286 S.W.2d 415, 419 (1955); Decker
v. Commercial Credit Equip. Corp., 540 S.W.2d 846 (Tex. Civ. App.-Texarkana 1976, no writ);
Pierce v. Pickett, 432 S.W.2d 586, 589 (Tex. Civ. App.-Amarillo 1968, no writ); Stout v. Oliveira,
153 S.W.2d 590, 596 (Tex. Civ. App.-El Paso 1941, writ ref'd w.o.m.); and (3) Centana and/or its
successors orally assigned their rights in the contract to Duke. See West Realty & Inv. Co. v. Hite,
283 S.W. 481, 483 (Tex. Comm'n App. 1926) (opinion approved); Sorenson v. Dawdy, 196 S.W.2d
687, 689 (Tex. Civ. App.-Fort Worth 1946, no writ); Restatement (Second) Of Contracts §§
317, 324 (1981). As indicated by the review of the summary judgment proof, Duke produced
summary judgment evidence sufficient to raise a fact issue on each of these legal theories. Duke's
general allegations in its summary judgment evidence that it succeeded to the rights of its
predecessors were sufficiently broad to encompass the theories of recovery noted above and to raise
inferences sufficient to show the existence of fact issues on those theories.

 In reviewing National Union's motion, we must determine whether, as a matter of law, it has
shown that it is not required to defend or indemnify Duke because it is not a party to a written
contract with Zaval-Tex. We find that this burden was not met. The evidence that Duke treated
Zaval-Tex as being employed under the terms of the written contract that Centana signed is
undisputed. It paid invoices referencing the contract, and the summary judgment evidence shows
that Duke's management considered the contract to be in full effect. National Union's argument that
Duke's later creation of another contract that Zaval-Tex signed shows otherwise is unpersuasive. 
National Union's position that both parties must sign in order for the written contract to have effect
is contrary to the law. 

 National Union also argues that there was never any meeting of the minds between Duke and
Zaval-Tex, that Duke's affidavits do not show that its management assented to the terms of the
contract, and that they only show that it intended to operate under terms like those in the Centana
contract. We disagree. The affidavits indicate that there was an intent to apply the terms of the
contract, that the relationship between the companies had been governed by those terms, and that the
parties believed the contract governed their relationship and acted accordingly. 

 National Union suggests that if Duke succeeded to the contract between Centana and Zaval-Tex, it was only an oral contract, not a written contract, so the terms of the insurance policy were not
met. We disagree. If Duke acquired the rights under the written contract, it was operating under the
written contract, not an oral one. 

 National Union also argues that even if the Centana contract is really a written contract
between Duke and Zaval-Tex, it only requires Zaval-Tex to obtain coverage as to Centana, the party
named in the body of the contract. Again, we disagree. If the contract is effective between Duke and
Zaval-Tex, Duke succeeds to all of Centana's rights and obligations under the written contract.

 National Union's final argument is that it is entitled to know, by looking at the contract, who
becomes an additional insured. If National Union's policy required that the additional insureds be
identified in the policy by name, or provided extra coverage for differing amounts depending on who
the additional insureds were, this argument might have merit, but the policy involved here requires
neither. It simply provides coverage to additional insureds when Zaval-Tex is, by written contract
with another party, required to obtain such coverage. There is no requirement that Zaval-Tex notify
National Union if such a contract exists, or the identity of the additional insured. 

 Duke also filed a motion for summary judgment, and it contends on appeal that the trial court
should have granted its motion. In general, an order granting summary judgment may be appealed,
but an order denying summary judgment may not. Novak v. Stevens, 596 S.W.2d 848, 849 (Tex.
1980). An exception to this rule exists when both parties file motions for summary judgment and
the court grants one and overrules the other. Tobin v. Garcia, 159 Tex. 58, 316 S.W.2d 396, 400
(1958). On appeal, the proper disposition is for the appellate court to render judgment for the party
whose motion should have been granted. Members Mut. Ins. Co. v. Hermann Hosp., 664 S.W.2d
325, 328 (Tex. 1984); McLemore v. Pac. Southwest Bank, FSB, 872 S.W.2d 286, 289 (Tex.
App.-Texarkana 1994, writ dism'd). Each party, however, must clearly prove its right to judgment
as a matter of law, and neither party may prevail simply because the other party failed to make the
required proof. Bd. of Adjustment of City of Dallas v. Patel, 887 S.W.2d 90, 92 (Tex.
App.-Texarkana 1994, writ denied); James v. Hitchcock Indep. Sch. Dist., 742 S.W.2d 701, 703
(Tex. App.-Houston [1st Dist.] 1987, writ denied). 

 We have found that fact issues were raised by the summary judgment evidence on the legal
theories supporting Duke's causes of actions. Summary judgment for Duke or National Union was
therefore improper.

 

 For the reasons stated, we reverse the summary judgment and remand the cause to the trial
court for trial.

 


 William J. Cornelius

 Chief Justice


Date Submitted: August 29, 2001

Date Decided: January 24, 2002


Publish


1. Both parties filed motions for summary judgment.
2. This information is provided in stipulations entered into by the parties and attached to the
motion for summary judgment.
3. A discussion of the concept of successor businesses and assignees is found in Thompson v.
N. Texas Nat'l Bank, 37 S.W.2d 735, 739 (Tex. Comm'n App. 1931) (opinion approved); Procter
v. Foxmeyer Drug Co., 884 S.W.2d 853, 861 (Tex. App.-Dallas 1994, no writ); Enchanted Estates
Cmty. Ass'n v. Timberlake Improvement Dist., 832 S.W.2d 800, 803 (Tex. App.-Houston [1st Dist.]
1992, no writ).