2022 IL App (1st) 210069
No. 1-21-0069
Opinion filed February 22, 2022

First Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

SECURA INSURANCE,                                )
                                                 )
    Plaintiff-Appellee,                        )      Appeal from the Circuit Court
                                                 )      of Cook County.
v.                                               )
                                                 )
PHILLIPS 66 COMPANY; PREMIER                     )      No. 19 CH 10805
INSULATION, LLC; CHARLES CROWDER;                )
and DONNA CROWDER,                               )
                                                 )      The Honorable
    Defendants                                 )      Moshe Jacobius,
                                                 )      Judge, presiding.
(Phillips 66 Company, Defendant-Appellant).      )

PRESIDING JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Walker and Coghlan concurred in the judgment and opinion.

OPINION

¶ 1      Premier Insulation, LLC (Premier), entered into a master service agreement (MSA) with ConocoPhillips Company (ConocoPhillips) to perform work at its Wood River Refinery. Premier was insured by plaintiff, Secura Insurance (Secura). Under the policy, "additional insureds" included persons or organizations that Premier added through a written agreement. ConocoPhillips spun off its refining business to defendant Phillips 66 Company (Phillips 66) and assigned Phillips 66 its MSA with Premier.

¶ 2        After a Premier employee sued Phillips 66 for injuries sustained at the Wood River Refinery, Phillips 66 tendered defense to Secura, claiming additional insured status as an assignee of the MSA. After agreeing to defend Phillips 66 under a reservation of rights, Secura sought a declaration that it had no duty to defend, given that (i) Premier and Phillips 66 had no written agreement that required naming Phillips 66 as an additional insured and (ii) the policy limited coverage to injuries caused "in whole or in part" by Premier or those acting on its behalf and Premier was not a named defendant in the underlying litigation.

¶ 3        The parties filed cross-motions for summary judgment. The trial court entered summary judgment for Secura. The trial court held that ConocoPhillips's assignment of the MSA to Phillips 66 "does not amount to a written agreement between Premier Insulation and Phillips 66, such that Premier Insulation agreed to add Phillips 66 as an additional insured." The court stated that, under the policy, Secura would need to consent to an assignment and nothing indicated "Secura was ever informed of the assignment from ConocoPhillips to Phillips 66 and certainly [there was] no evidence that it ever consented." Finding no written agreement between Premier and Phillips 66, the trial court did not address whether the decision by the underlying litigation plaintiffs, Charles and Donna Crowder, to not name Premier as a defendant there precluded coverage.

¶ 4        Phillips 66 appeals, contending (i) ConocoPhillips's assignment of the MSA to Phillips 66 satisfies the written agreement provision of the additional insured endorsement or, alternatively, the endorsement is ambiguous and should be construed favoring coverage; (ii) the insurance policy's anti-assignment provision is irrelevant and the trial court's reliance on it constitutes reversible error; and (iii) whether the underlying complaint alleged Premier "in whole or in part" caused the injuries is irrelevant. Neither party argues the policy's anti-

assignment provision provides a basis to deny coverage under the policy's additional insured endorsement.

¶ 5     We reverse. The assignment of the MSA satisfies the written agreement requirement between Premier and Phillips 66, obligating Secura to defend Phillips 66 as an additional insured. Further, given Premier's tort immunity under the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2020)), it need not be named as a defendant in the underlying litigation to trigger coverage. Accordingly, we remand to the trial court to enter summary judgment for Phillips 66 on the issue of coverage under the policy.

¶ 6                                          Background

¶ 7     The parties stipulated to the facts. On July 20, 2011, ConocoPhillips Company entered into a master service agreement with Premier, which went into effect on August 1, 2011. Under the MSA, Premier would perform work on downstream operations or projects of ConocoPhillips and its affiliates.

¶ 8     Section 18.1.2, an indemnification provision, provided:

> "Personnel of Contractor and Subcontractors. CONTRACTOR SHALL INDEMNIFY EACH OF THE COMPANY INDEMNITEES FROM AND AGAINST ANY AND ALL CLAIMS ARISING OUT OF OR RELATED IN ANY WAY TO PERSONAL INJURY OF THE EMPLOYEES OR OFFICERS OF THE CONTRACTOR INDEMNITEES ARISING OUT OF OR OCCURRING IN CONNECTION WITH A SERVICE-ORDER, REGARDLESS OF THE TIMING OR NATURE OR STYLE OF SUCH CLAIMS AND REGARDLESS OF THE IDENTITY OF THE CLAIMANT INCLUDING, BUT NOT LIMITED TO, THE EMPLOYEE OR OFFICER HIMSELF

AND THEIR RESPECTIVE REPRESENTATIVES, AGENTS, HEIRS, BENEFICIARIES, ASSIGNS AND FAMILY MEMBERS."

¶ 9    The MSA also included an insurance requirements provision: "[Premier] agrees to maintain insurance of the types and with limits of liability not less than those set forth below, at its expense, from insurers reasonably acceptable to Company covering items, risks and operations required to fulfill the Agreement and the Service-Orders."

¶ 10    As to naming an additional insured, the MSA provided: "The policies under Articles 19.1.3 through 19.1.17 above shall show each of the Company Indemnitees as additional insureds to the extent of the risks and liabilities assumed by Contractor under this Agreement and/or any Service Order ***."

¶ 11    The assignment provision of the MSA stated in relevant part:

"Contractor [(Premier)] shall not assign this Agreement, in whole or in part, without the prior written consent of Company [(ConocoPhillips)]. Any such assignment without the prior written consent of [ConocoPhillips] shall be void and of no force and effect. This Agreement shall inure to and be binding upon the respective successors and permitted assigns of the parties hereto."

¶ 12    Nothing in the MSA required Premier's prior consent before an assignment.

¶ 13    On July 14, 2011, less than a month before the MSA went into effect, ConocoPhillips announced that its refining and marketing business and exploration and production business would become two separate, stand-alone entities. After the spin-off, Phillips 66 would operate the refining and marketing business and own ConocoPhillips's downstream assets. On January 11, 2012, ConocoPhillips sent a letter to Premier informing it of the upcoming spin-off and its assignment of the MSA to Phillips 66. After the assignment, Premier performed work for

Phillips 66 at the Wood River Refinery. A written compensation agreement, which Phillips 66 and Premier amended several times, referenced and incorporated the MSA.

¶ 14                    Secura's Insurance Policy

¶ 15        Premier had a commercial general liability insurance policy with Secura Insurance, effective July 1, 2015, to July 1, 2016. The policy included a "General Liability Wrap":

"ADDITIONAL INSURED BY CONTRACT

1. SECTION II—WHO IS AN INSURED is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for 'bodily injury', 'property damage' or 'personal and advertising injury' caused, in whole or in part, by:

a. Your acts or omissions; or

b. The acts or omission of those acting on your behalf;

in the performance of the ongoing operations for the additional insured.

A person's or organization's status as an additional insured under this provision ends when your operations for that additional insured are completed."

¶ 16        The policy included an "Additional Insured Wrap" endorsement, which states in part:

"A. Additional Insured When Required By Written Construction Contract

1. Operations Performed for An Additional Insured

WHO IS AN INSURED is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or

organization have agreed in a written contract or written agreement prior to a loss, that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for 'bodily injury', 'property damage' or 'personal and advertising injury' caused, in whole or in part, by:

a. Your acts or omissions; or

b. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured.

A person's or organization's status as an additional insured under this provision ends at the earlier of when your operations for that additional insured are completed; or the end of the policy period."

¶ 17                          Underlying Complaint

¶ 18        Charles Crowder, a Premier employee, was injured when he fell from a scaffold at Phillips 66's Wood River Refinery. Crowder and his wife sued Phillips 66 and several other entities that were members of "The Projects Group," which supervised and monitored safety issues at the Wood River Refinery. Premier was a member of the Projects Group, but the Crowders did not name it as a defendant. Phillips 66 tendered to Secura the defense and indemnification. Secura agreed to defend Phillips 66 under a reservation of rights. Secura contended Phillips 66 was not an additional insured because Premier and Phillips 66 lacked a written agreement naming Phillips 66 as an additional insured. Secura also asserted that the additional insured endorsement limited coverage to injuries caused "in whole or in part" by Premier's acts or omissions and that Premier was neither a defendant nor alleged to have caused the injuries.

Secura then filed this action for a declaration that it had no duty to defend or indemnify Phillips 66 for the same reasons stated in its reservation of rights letter.

¶ 19    Secura and Phillips 66 filed cross-motions for summary judgment. Secura primarily relied on a case that it conceded as factually different, *Westfield Insurance Co. v. FCL Builders, Inc.*, 407 Ill. App. 3d 730 (2011). There, an additional insured provision identical to the one here "unambiguously limits Westfield's obligations to only [the subcontractor] and those entities with whom [the subcontractor] directly contracts in writing for additional coverage." *Id.* at 735. Secura added that it "believes that Illinois law will not consider an assignment of a contract to be equivalent of a contract between the two original signatories to the contract."

¶ 20    Conversely, Phillips 66 argued Illinois courts would likely follow cases involving an assignment, which, though from other jurisdictions, share the vital presence of an assignment. *Holbrook Realty, LLC v. Peerless Insurance Co.*, No. 18-CV-1005 (JMA)(SIL), 2019 WL 4862073 (E.D.N.Y. Aug. 5, 2019); *Travelers Property Casualty Co. of America v. Burlington Insurance Co.*, 120 N.Y.S.3d 25 (App. Div. 2020); *Duke Energy Field Services Assets, L.L.C. v. National Union Fire Insurance Co.*, 68 S.W.3d 848 (Tex. App. 2002).

¶ 21    After a hearing, the trial court issued a memorandum opinion and order granting Secura's motion and denying Phillips 66's motion. The trial court found no Illinois cases addressing whether an assignment satisfies the written contract requirement, relying instead on *Westfield* and distinguishing cases cited by Phillips 66. The trial court stated:

> "Premier Insulation had [a] written agreement with ConocoPhillips. Even though ConocoPhillips assigned the MSA to Phillips 66, *** [t]here is no indication Secura was ever informed of the assignment from ConocoPhillips to Phillips 66 and certainly no evidence that it ever consented. As Phillips 66 is an independent company without

any overlap with ConocoPhillips and not a successor in interest, a separate written contract or agreement between Premier Insulation and Phillips 66 was required for Phillips 66 to be an additional insured under the Policy."

¶ 22 The trial court also rejected Premier and Phillips 66's compensation agreement, which referenced and incorporated the MSA, as satisfying the writing provision: "The fact the Compensation Agreement and subsequent amendments reference the MSA is insufficient to afford Phillips 66 coverage as an additional insured under the plain language of the Policy."

¶ 23 The court did not address Secura's argument that Premier, as a nonparty in the underlying litigation, precluded Phillips 66 from status as an additional insured.

¶ 24 We must decide (i) whether assignment of the MSA constitutes a written agreement for purposes of the additional insured endorsement and (ii) whether the absence of Premier as a defendant in the underlying litigation means the Crowders' injuries were not caused "in whole or in part" by Premier. The parties agree no Illinois case has decided the former issue.

¶ 25                                    Analysis

¶ 26                              Standard of Review

¶ 27 A court may grant summary judgment whenever the pleadings, depositions, admissions, and affidavits, viewed in the light most favorable to the nonmovant, show that (i) no genuine issue of material fact exists and (ii) the moving party is entitled to judgment as a matter of law. See 735 ILCS 5/2-1005(c) (West 2020). "The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment." *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). Summary judgment in favor of an entity seeking coverage as an additional insured is appropriate where the undisputed

facts demonstrate that a policy's requirements for additional insured coverage have been satisfied. See, *e.g.*, *Pekin Insurance Co. v. Pulte Home Corp.*, 404 Ill. App. 3d 336, 349 (2010). We review an order granting summary judgment *de novo.* See *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 399-400 (2010).

¶ 28                    Written Agreement Between Premier and Phillips 66

¶ 29        Phillips 66 contends the assignment between it and ConocoPhillips satisfies the written agreement requirement of the additional insured endorsement, relying on out-of-state cases holding that an assignment is a contract for purposes of an additional insured endorsement.

¶ 30        As in the trial court, Secura primarily relies on *Westfield*. While acknowledging that the facts in *Westfield* are not analogous, Secura contends the case still precludes Phillips 66 from coverage in the absence of a written agreement between Phillips 66 and Premier to name it as an additional insured.

¶ 31        In *Westfield*, the general contractor, FCL Builders, Inc. (FCL), subcontracted out steel fabrication and erection work to Suburban Ironworks, Inc. (Suburban). *Westfield*, 407 Ill. App. 3d at 731. Suburban was required to name FCL as an additional insured and have all sub-subcontractors name FCL as an additional insured. *Id.* Suburban subcontracted out the steel erection work to JAK Iron Works, Inc. (JAK), and purchased an insurance policy from Westfield Insurance Company (Westfield) covering itself, Suburban, and FCL. *Id.* at 731-32. JAK's policy included an additional insured endorsement identical to the endorsement in the Secura policy. See *id.* at 732. When a JAK's employee sustained an injury, FCL tendered the defense and indemnification to Westfield, which denied coverage, asserting FCL was not an additional insured under the policy because JAK and FCL did not have a written contract. *Id.*

¶ 32    Westfield sought a declaration that it was not obligated to defend or indemnify FCL in the underlying litigation. *Id.* The trial court granted summary judgment to Westfield, holding that the policy required " 'direct priv[i]ty in order for an entity to qualify as an additional insured.' " *Id.* at 733. The appellate court affirmed that the policy "explicitly and unambiguously requires a direct, written agreement." *Id.* at 734. But because no written agreement ever existed between FCL and JAK, "Westfield is not obligated to furnish FCL with a defense or indemnification" in the underlying lawsuit. *Id.*

¶ 33    FCL offered three arguments for coverage. First, the Suburban-JAK contract required JAK to include FCL as an additional insured, and this obligation satisfied the additional insured provision. *Id.* The appellate court disagreed, noting the plain language of the additional insured endorsement required a writing between JAK and the person or organization to be added as an additional insured, and there was none. *Id.* FCL also contended that, because JAK was contractually obligated to Suburban to list FCL as an additional insured and JAK later bought a CGL policy from Westfield, FCL must necessarily be an additional insured under that policy. *Id.* The appellate court rejected this argument, finding

> "[r]egardless of whether JAK and Suburban had agreed that FCL should be an additional insured, JAK and FCL did not agree in writing that FCL was an additional insured. The terms of the FCL-Suburban contract and the Suburban-JAK contract are consequently irrelevant to whether Westfield is obligated to cover FCL as an additional insured under this particular policy provision." *Id.* at 735.

¶ 34    Finally, FCL pointed to deposition testimony of Suburban's owner and JAK's superintendent showing Suburban and JAK intended for FCL to be an additional insured under the policy. *Id.* at 736. But the appellate court concluded that the provision was unambiguous,

so it would be "inappropriate" to consider extrinsic evidence such as the deposition testimony. *Id.* And even if the court considered the extrinsic evidence, the deposition testimony refers only to what Suburban and JAK intended regarding their respective obligations under the Suburban–JAK contract, not what they intended for their respective obligations under the Westfield insurance contract. *Id.*

¶ 35    Secura argues that, like the carrier in *Westfield*, it had no duty under Premier's policy because Phillips 66 and Premier do not have a written contract requiring Premier to name Phillips 66 as an additional insured. In short, Secura contends, privity between the parties arises only under the ConocoPhillips's assignment to Phillips 66. And, while Premier continued to perform work for Phillips 66 and followed the terms of the contract, nothing indicates Premier agreed to name Phillips 66 on an insurance policy.

¶ 36    *Westfield* does not control this case because the facts differ in a crucial particular. In *Westfield*, the party seeking coverage as an additional insured, FCL, the general contractor, had no contractual relationship with JAK, the sub-subcontractor policyholder. Here, Phillips 66 and Premier have a contractual relationship through the assignment of the MSA. An assignment is a contract between the assignor and the assignee. *Amalgamated Transit Worker's Union, Local 241 v. Pace Suburban Bus Division,* 407 Ill. App. 3d 55, 60 (2011) (citing 6 Am. Jur. 2d *Assignments* § 1 (2008)). And it transfers to the assignee all identifiable property, claims, interests, and rights of the assignor. See *Apollo Real Estate Investment Fund, IV, L.P. v. Gelber*, 398 Ill. App. 3d 773, 779 (2009). This puts the assignee squarely in the shoes of the assignor. *Id.* The MSA provided that Premier would indemnify the "Company," which became Phillips 66 when it stepped into ConocoPhillips's shoes following the assignment.

¶ 37    Other jurisdictions have ruled contrary to *Westfield* in matters involving an assignment. Phillips 66 principally relies on *Holbrook*, 2019 WL 4862073, where for purposes of an additional insured endorsement, the assignment of a written contract constituted a written contract.

¶ 38    In *Holbrook*, landlord Route 347 Corporation leased space to Vero & Vero Ronkonkoma, Inc. (Vero). *Id.* at *1-2. Reynold Blum purchased the premises following a forfeiture. Vero assigned its tenancy interest to O.K. Yogurt, Inc., which later assigned it to A&R Yogurt, Inc. (A&R). *Id.* at *2. Meanwhile, Blum transferred his rights in the lease to Holbrook Realty, LLC (Holbrook), resulting in a landlord-tenant relationship between Holbrook and A&R. *Id.*

¶ 39    A&R obtained insurance from Peerless Insurance Company (Peerless). *Id.* at *3. The policy was amended to include as an additional insured " 'any person or organization when [A&R] and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured' " on the policy. (Emphasis omitted.) *Id.* at *3. After an injury on the premises, Holbrook sought coverage as an additional insured. Peerless denied coverage, arguing Holbrook did not qualify as an additional insured under Peerless's policy, as Holbrook lacked privity in contract with A&R. *Id.* at *4-5.

¶ 40    The court rejected Peerless's argument, finding it "misses the mark." *Id.* at *10. On the contrary, "Holbrook and A&R were in direct privity with each other by virtue of the assignments and assumptions obligating them to be bound by the same Lease." *Id.* at *8. The court concluded that "the text of the Lease and Peerless Policy leaves no doubt that Holbrook is deemed an additional insured by virtue of its role as landlord." *Id.* The court found the policy automatically includes as an additional insured " 'any *** organization when [A&R] and such *** organization have agreed in writing in a contract or agreement that such *** organization

be added as an additional insured ***.' " *Id.* Moreover, the lease required A&R to " 'name the Landlord as an additional first party insured' " on its liability insurance policy. *Id.*

¶ 41        Phillips 66 also cites two cases that came to the same conclusion as *Holbrook*: *Travelers Property Casualty Co. of America*, 120 N.Y.S.3d 25, and *Duke Energy*, 68 S.W.3d 848. The state court in *Travelers* followed the holding in *Holbrook*: an assignment of a written agreement constitutes a written agreement for an additional insured endorsement. *Travelers Property Casualty Co. of America*, 120 N.Y.S.3d at 25 (" '[B]y virtue of the assignments and assumptions obligating [Sal Vio and Plaza] to be bound by the same [subcontract],' [Burlington] may be obligated to insure [Plaza]." (quoting *Holbrook*, 2019 WL 4862073, at *8)). Similarly, in *Duke Energy*, the appellate court acknowledged that an assignment of the written contract would satisfy the "written contract" requirement and trigger additional insured coverage. *Duke Energy*, 68 S.W.3d at 852.

¶ 42        The reasoning in *Holbrook, Travelers,* and *Duke Energy* is persuasive. More significantly, their holdings conform to long-standing principles regarding assignments. See *infra* ¶ 36; *Apollo Real Estate Investment Fund, IV, L.P.*, 398 Ill. App. 3d at 779. When ConocoPhillips assigned the MSA to Phillips 66, that satisfied the writing requirement for an additional insured. Phillips 66 stepped into ConocoPhillips's proverbial shoes, satisfying the writing requirement and obligating Secura to defend it in the underlying litigation. Additional evidence of a contract arises from the Premier-Phillips 66 written compensation agreement, which referenced and incorporated the MSA.

¶ 43                    Injuries Caused "In Whole or In Part" by Premier

¶ 44        After finding in favor of Secura on the written agreement issue, the trial court did not address Secura's argument that it had no duty to defend Phillips 66 because the policy requires

the Crowders' underlying complaint name Premier as a defendant or allege the injuries were caused "in whole or in part" by Premier's negligence. The underlying complaint did neither. Phillips 66 contends that Premier being a nonparty in the underlying litigation still enables coverage under the policy. We agree with Phillips 66.

¶ 45    The Workers' Compensation Act (820 ILCS 305/5(a) (West 2020)) gives tort immunity to an injured worker's direct employer, barring the injured worker from bringing a personal injury complaint against his or her employer. *American Country Insurance Co. v. James McHugh Construction Co.*, 344 Ill. App. 3d 960, 963 (2003). So, " '[t]he allegations of the underlying complaint must be read with the understanding that the employer may be the negligent actor even where the complaint does not include allegations against that employer.' " *Core Construction Services of Illinois, Inc. v. Zurich American Insurance Co*., 2019 IL App (4th) 180411, ¶ 28 (quoting *Pekin Insurance Co. v. Centex Homes*, 2017 IL App (1st) 153601, ¶ 36). Indeed, " 'silen[ce] as to any acts or omissions' by the named insured must be understood as the possible result of tort immunity for employers under the workers' compensation laws and should not be a basis for refusing to defend an additional insured." *Centex Homes*, 2017 IL App (1st) 153601, ¶¶ 36, 38 (quoting *Ramara, Inc. v. Westfield Insurance Co.*, 814 F.3d 660, 677-78 (3d Cir. 2016)).

¶ 46    The Crowders' complaint alleged that the Projects Group, which included Premier, committed negligent acts or omissions by breaching the duty to provide a reasonably safe place to work. Notably, the only member of The Projects Group not named a defendant was Charles Crowder's employer, Premier. The absence of Premier as a named defendant follows directly from its tort immunity and not a concession on its negligence. *Core Construction Services of*

*Illinois, Inc.*, 2019 IL App (4th) 180411, ¶ 28. Nor is it a basis for refusing to defend Phillips 66 as an additional insured. *Centex Homes*, 2017 IL App (1st) 153601, ¶¶ 36, 38.

¶ 47    So, we reverse the order granting Secura's summary judgment motion and remand with directions to the trial court to enter an order granting summary judgment for Phillips 66 on the issue of coverage.

¶ 48    Reversed and remanded with directions.

---

**No. 1-21-0069**

---

| | |
|---|---|
| **Cite as:** | *Secura Insurance v. Phillips 66 Co.*, 2022 IL App (1st) 210069 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-CH-10805; the Hon. Moshe Jacobius, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Andrew M. Barrios and John N. Ellison, of Reed Smith LLP, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Daniel R. Sarther and Steven C. Wolf, of Wolf & Laudicina, Ltd., of Chicago, for appellee. |

---